UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

United States of America

    v.
Criminal No. 11-cr-83-JL
Opinion No. 2012 DNH 143

Paul Wilson

**MEMORANDUM ORDER**

This case involves the application of § 3B1.3 of the United States Sentencing Guidelines, specifically, whether § 3B1.3 requires the defendant be in a position of trust vis-à-vis his or her victim. Defendant Paul Wilson, a former employee of Goss International Americas, Inc. ("Goss"), pleaded guilty to three counts of wire fraud in violation of 18 U.S.C. § 1343. In its Presentence Investigation Report ("PSR"), the United States Probation Office recommended that a two-level increase be applied to Wilson's base offense level pursuant to § 3B1.3 for abusing a position of trust at Goss. Both the defendant and the government have objected to this two-level enhancement, arguing that Wilson was not in a "trust relationship" with his victims.

As discussed in more detail below, neither the plain language of § 3B1.3 nor its official commentary requires the defendant to be in a position of trust vis-à-vis his or her victim in order for the adjustment to apply. It is true that some courts in other circuits have created a "relationship with the victim" prerequisite to § 3B1.3's applicability, citing the "intent" underlying the Guideline. Our Court of Appeals has never done so, however, and has strongly implied (if not conclusively held) that such a prerequisite does not exist. In any event, because the language of the guideline itself unambiguously does not require such a relationship, judicial

effort to ascertain the intent behind the Guideline is neither necessary nor appropriate.  See, e.g., United States v. Luna-Díaz, 222 F.3d 1, 3 (1st Cir. 2000).  Because Wilson "abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense," U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 3B1.3 (2011), the court concludes that a two-level enhancement pursuant to § 3B1.3 is appropriate in this case.

## I.   Applicable legal standard

"[A]lthough they are not statutes, [the sentencing guidelines] are to be construed in much the same fashion." United States v. DeLuca, 17 F.3d 6, 10 (1st Cir. 1994).  A sentencing court "begin[s], as with other questions of statutory and regulatory interpretation, with the plain language of the disputed guideline."  Luna-Díaz, 222 F.3d at 3; see also United States v. Guevara-Lopez, 92 F.3d 1169 (1st Cir. 1996) ("[C]onstruction of the relevant guideline section should begin by looking at the language of the law and by examining the ordinary, contemporary, common meaning of the words.").  Where there is ambiguity in a guideline's language, the Court of Appeals has endorsed the use of external aids as a guide to discerning the meaning of the guideline.  For example, "the Sentencing Commission's commentary and application notes are given substantial weight." United States v. Thongsophaporn, 503 F.3d 51, 58 n.7 (1st Cir. 2007).  Under First Circuit case law, the sentencing court may also "refer[] to pre-guidelines precedent," United States v. O'Neil, 11 F.3d 292, 298 (1st Cir.

2

1993), and "the purposes and underlying policy" of the guideline, Guevara-Lopez, 92 F.3d at 1169.

Once the court has determined the meaning of the guideline, it must decide whether a preponderance of the evidence supports its application. United States v. Sicher, 576 F.3d 64, 70 (1st Cir. 2009). The evidence "must be viewed as a whole and not atomized." Id. at 71. The court may rely on facts set forth in the PSR, and, though the defendant may object to those facts, "if his objections to the PSR are merely rhetorical and unsupported by countervailing proof, the district court is entitled to rely on the facts in the PSR." United States v. Prochner, 417 F.3d 54, 65-66 (1st Cir. 2005) (internal alterations omitted). The court is also "entitled to rely on circumstantial evidence, and draw plausible inferences therefrom." United States v. Cannon, 589 F.3d 514, 517 (1st Cir. 2009).

## II. Background

From 1999 to February 2008, Wilson was employed as the International Trade Finance Manager at Goss in Durham, New Hampshire. Goss manufactures large commercial printing presses, which it sells both domestically and internationally. When conducting international sales, Goss utilized the Export-Import Bank, or "Ex-Im." Ex-Im is an independent agency of the United States that provides insurance and guarantees on loans to aid

foreign buyers in the purchase of U.S. goods, with the goal of promoting exports.

In his capacity as International Trade Finance Manager, Wilson was responsible for obtaining information about the financial status of foreign buyers of Goss's printing presses, and submitting that information to Ex-Im in connection with Goss's applications for credit insurance. After Ex-Im insured Goss's loans to its foreign buyers, Goss would sell the loans to other lenders. Wilson was also involved in Goss's sales of these loans. Through this work, Wilson came into contact with James Bender, a Senior Vice President at Sovereign Bank in Boston.

In the mid-2000s, Wilson and Bender incorporated two entities--Zephyr Capital, LLC and Zephyr Financial, LLC (collectively, "Zephyr")--which purportedly offered international sales advice and services. On four separate occasions between 2006 and 2008, Wilson and Bender used their positions at Goss and Sovereign to bill Goss customers for work that Zephyr had not actually performed. Wilson used his position at Goss to lead these customers to believe that Goss had engaged Zephyr to perform this work. By way of example, Wilson sent one customer a letter (on Goss letterhead and signed in his capacity as finance manager) stating that "we are working with Zephyr Capital to obtain EXIM approval" and "[b]oth Zephyr Capital and myself are very confident the transaction shall be approved."

4

On three of these four occasions, the customers paid the invoices via wire transfers to Zephyr's bank account. On the fourth occasion, after Wilson had left Goss, the intended victim contacted Wilson's successor at Goss, who uncovered Wilson's and Bender's scheme.

## III. **Analysis**

Section 3B1.3 of the United States Sentencing Guidelines provides that "[i]f the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense," the defendant's base offense level must be increased by 2 levels. U.S.S.G. § 3B1.3 (2011). Wilson argues that in order for this enhancement to apply, "there must be a trust relationship between the Defendant and the victims," as "analyzed from the perspective of the victims." Deft.'s Obj. to PSR (document no. 29) at 1 (citing United States v. Moore, 29 F.3d 175 (4th Cir. 1994); United States v. Ghertler, 605 F.3d 1256, 1263 (11th Cir. 2010); United States v. Jolly, 102 F.3d 46, 48 (2d Cir. 1996)). Because he "had a position of trust with his employer, but no more than ordinary buyer seller relationships with the victims," he says, "§ 3B1.3 does not apply." Id. at 2. The prosecutor concurs in Wilson's assessment. The court does not.

5

As already noted, this court's interpretation of § 3B1.3 begins with the plain language of that guideline, Luna-Díaz, 222 F.3d at 3, and nothing in the guideline's language so much as hints at the asserted requirement of a "trust relationship" with the victim or victims. See United States v. Thomas, 510 F.3d 714, 726 (7th Cir. 2007) ("[T]here is nothing in § 3B1.3 that requires the government to prove that the defendant's conduct 'victimized' those whose trust he abused in the commission of the crime."); United States v. Cianci, 154 F.3d 106, 112 (3d Cir. 1998) ("Admittedly, the employer-victim here was not the victim of the offense of commission, but no language in [§ 3B1.3] so circumscribes the enhancement."). Indeed, Wilson himself concedes that "the plain language of the guidelines says nothing about a victim." Deft.'s Obj. to PSR at 3. On its face, the guideline requires only that (a) "the defendant abused a position of public or private trust" and (b) the defendant did so "in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3 (2011). That should be the alpha and the omega of this court's inquiry. "Judges are not free to rewrite the sentencing guidelines," United States v. Carrasco-Mateo, 389 F.3d 239, 245 (1st Cir. 2004), and at least some rewriting would be necessary to reach the parties' desired reading of § 3B1.3.

It is conceivable, of course, that the Sentencing Commission might, through its Commentary, seek to put a gloss on an unambiguous guideline that further clarifies the guideline's meaning.[1]  But the Commentary and Application Notes to § 3B1.3 are as silent on the reputed "trust relationship" requirement as the guideline itself.  Indeed, the Commentary's definition of a "position of public or private trust"--one "characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference," U.S.S.G. § 3B1.3, cmt. n.1--makes clear that the determining factor is the amount of discretion the defendant has by virtue of his or her position, and not the relationships the defendant creates as a result of that position.[2]

As both Wilson and the prosecution note, courts in some other circuits have found it appropriate to limit § 3B1.3's applicability to those cases in which the defendant occupies a

---

[1]Like any interpreting court, the Commission is constrained by the language of the guidelines; it may not interpret or explain a guideline in a way that "is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, 508 U.S. 36, 38 (1993).

[2]This is borne out in the Commentary's comparison of the types of cases in which the adjustment will and will not apply. "[A] bank executive's fraudulent loan scheme" will qualify for the adjustment, the Commentary notes, but "an embezzlement or theft by an ordinary bank teller" will not, because such a position is not characterized by the same type of professional and managerial discretion. U.S.S.G. § 3B1.3, cmt. n.1.

position of trust vis-à-vis the victim.  See, e.g., United States v. Garrison, 133 F.3d 831 (11th Cir. 1998); United States v. Broderson, 67 F.3d 452 (2d Cir. 1995).  Our own Court of Appeals has not endorsed this construction of the guideline, and in fact, firmly rejected a nearly identical construction in United States v. Sicher, 576 F.3d 64 (1st Cir. 2009).  The defendant in that case, citing Garrison, argued "that there must be a fiduciary or fiduciary-like relationship between the defendant and victim of the defendant's fraud" for § 3B1.3 to apply.  Id. at 70 n.5.  The Court of Appeals curtly dismissed this interpretation in a footnote, noting "[t]his is not the law of our circuit, and we reject the argument."[3]  Id.

---

[3]At sentencing, the court questioned counsel for both parties regarding the Sicher court's use of the term "fiduciary or fiduciary-like," wondering if that language had a connotation different than "position of trust."  But the term "fiduciary-like" can only be understood to involve a position of trust.  See Webster's Third New International Dictionary 845 (2002) (defining "fiduciary" as "holding, held, or founded in trust or confidence"; "of, or having to do with, confidence or trust"); see also Black's Law Dictionary 1212 (9th ed. 2009) (defining "fiduciary" as a "person who is required to act for the benefit of another person on all matters within the scope of their relationship; one who owes to another the duties of good faith, trust, confidence, and candor").  Further, in rejecting the defendant's argument, the Court of Appeals cited a passage in Garrison in which the Eleventh Circuit clearly equated the concepts of fiduciary and position of trust.  See Sicher, 576 F.3d at 70 n.5 (citing Garrison, 133 F.3d at 838-39 & n.18).

When the Court of Appeals does take into account evidence that the defendant occupied a position of trust in relation to the victim, it does so in order to gauge the defendant's level of discretion and autonomy.  See Sicher, 576 F.3d at 73 (noting that victim's trust in defendant does not, standing alone, establish

Even assuming Sicher does not settle this issue, this court sees no reason to follow the line of cases requiring a "trust relationship" between the defendant and victim.  The courts in those cases have reached their conclusion by looking beyond the face of the guideline, seeking to ascertain its purpose or the intent of the Sentencing Commission in promulgating § 3B1.3.  See Garrison, 133 F.3d at 837-43; Broderson, 67 F.3d at 455.  But where the language of the guideline is clear and unambiguous, as it is here, notions of the Sentencing Commission's intent have no place in a court's analysis.  Cf. United States v. Meyer, 808 F.2d 912, 915 (1st Cir. 1987) ("Where, as here, the language of a statute seems clear and unambiguous, courts should be extremely hesitant to search for ways to interpose their own notions of Congress's intent.").

This is not to say the position advanced by the parties--concededly, the majority view among the circuit courts--is irrational, illogical, or imprudent.  Reasonable minds may differ on these issues.  The parties' arguments were thoughtful and well presented (if a bit surprising on the government's part).  But it is not the court's province to interpret a statute or guideline

_____

defendant's position of trust, but is relevant evidence of defendant's level of discretion); United States v. O'Connell, 252 F.3d 524, 528-29 (1st Cir. 2001) (considering defendant's close, personal relationship with victims in finding application of the enhancement warranted).  But it has never suggested that such a relationship is the sine qua non of § 3B1.3's applicability.

9

based on its own judicial conception of legislative or administrative purpose or intent. The court must apply the guideline as promulgated, and should not "fashion an exception . . . where the Commission has not," even if the result might seem anomalous; "[i]t is not our place to rewrite the Guidelines." United States v. Sanders, 982 F.2d 4, 8 (1st Cir. 1992).

Courts in this circuit employ a simple two-step test to determine whether an abuse-of-trust enhancement under § 3B1.3 is appropriate. To apply the enhancement, the sentencing court must find that the defendant (1) occupied a position of trust, and (2) used that position to facilitate or conceal the offense. Sicher, 576 F.3d at 71. No extensive analysis is necessary here. Both Wilson and the government admitted, at the sentencing hearing and in their pre-hearing filings, that he occupied a position of trust at Goss and that he used that position to facilitate his offenses. See Deft.'s Obj. to PSR at 2 ("In this case the Defendant had a position of trust with his employer . . . Through this position, Defendant allegedly obtained targets for his fraud and was able to conceal his crimes."); Govt.'s Obj. to PSR (document no. 30) at 2 ("[T]he evidence is that the defendant was a managerial employee of Goss International America Corp. who was charged with structuring the financing extended by Goss to the victim companies to facilitate their purchases of Goss

printing presses. . . . [T]he defendant used his position at Goss to advance and conceal his crimes . . . .").

The facts related in the PSR, and summarized above, confirm these admissions. Wilson was in a managerial position that lacked oversight to the degree that no one at Goss discovered his transgressions until after he had left the company. When he left the company, his crime was uncovered because he no longer held the position, which had allowed him to run interference and deflect troublesome inquiries from Goss's defrauded customers. That position similarly facilitated commission of his fraud. He utilized the company's relationship with international clients, and its regular dealings with Ex-Im, to charge the victim companies for unnecessary (and unperformed) work. Without this system in place and his role as finance manager for Goss, which enabled him to act as a liaison between the foreign corporations and Ex-Im, it seems unlikely that he would have been able to conceal his offenses for so long. Because Wilson "abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense," U.S.S.G. § 3B1.3 (2011), his offense level will be increased by two levels pursuant to § 3B1.3.

11

## IV. Conclusion

For the reasons set forth above, the court concludes that a two-level increase under U.S.S.G. § 3B1.3 is warranted in this case.  The defendant will be sentenced accordingly.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: August 23, 2012

cc:  Mark S. Zuckerman, Esq.
     Peter D. Anderson, Esq.

12