**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 15-4312**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellant,

    v.

AGUSTIN LOPEZ-COLLAZO, a/k/a Agustin Martinez-Lopez, a/k/a Agustin Lopez,

        Defendant - Appellee.

---

Appeal from the United States District Court for the District of Maryland, at Baltimore. Ellen L. Hollander, District Judge. (1:14-cr-00486-ELH-1)

---

Argued: December 9, 2015         Decided: June 1, 2016

---

Before TRAXLER, Chief Judge, and GREGORY and DIAZ, Circuit Judges.

---

Reversed and remanded by published opinion. Chief Judge Traxler wrote the opinion in which Judge Diaz joined. Judge Gregory wrote a dissenting opinion.

---

**ARGUED:** Sujit Raman, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellant. Joanna Beth Silver, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellant. James Wyda, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellee.

TRAXLER, Chief Judge:

In June 2007, Agustin Lopez-Collazo, an illegal alien from Mexico, was placed in expedited removal proceedings when immigration officials from the Department of Homeland Security ("DHS") determined that his conviction for second degree assault in Maryland constituted an "aggravated felony." See 8 U.S.C. § 1228(b). Lopez-Collazo did not contest the DHS's charges against him and was removed to Mexico in November 2007. Soon after, Lopez-Collazo again entered the United States illegally; he was subsequently discovered and indicted for illegal reentry by a deported alien in violation of 8 U.S.C. § 1326(a), (b)(2). The district court granted Lopez-Collazo's motion to dismiss the indictment under § 1326(d), concluding that the underlying removal order was invalid because DHS failed to explain to Lopez-Collazo in his native language either the removal charges against him or his right to contest the charges or obtain legal representation. See United States v. Lopez-Collazo, 105 F. Supp. 3d 497 (D. Md. 2015).

The government appeals, arguing that even assuming the administrative removal proceedings were procedurally defective, Lopez-Collazo cannot establish prejudice. The government contends that even if DHS had provided Lopez-Collazo a Spanish-language translation of the removal charges and his right to

2

contest them, it would not have made a difference—he still would have been removed to Mexico.

For the reasons that follow, we agree with the government and reverse the order of the district court dismissing the indictment. We remand this case to the district court with instructions that the indictment be reinstated.

I.

A. Lopez-Collazo's 2007 Removal to Mexico and Subsequent Indictment for Illegal Reentry in Violation of 8 U.S.C. § 1326(a), (b)(2)

Agustin Lopez-Collazo is a native of Mexico who entered the United States without authorization prior to 2005. In January 2005, Lopez-Collazo pled guilty under Maryland law to a theft offense involving less than $500. See Md. Code Ann., Crim. Law § 7-104. In May 2007, he pled guilty under Maryland law to second degree assault, see Md. Code Ann., Crim. Law § 3-203, for which he was sentenced to 18 months imprisonment, with all but 72 days suspended, and given 18 months probation.

The Office of Immigration and Customs Enforcement ("ICE") took notice of Lopez-Collazo following his 2007 assault conviction and initiated expedited removal proceedings against him. Under 8 U.S.C. § 1228(b), an alien who is not a permanent resident and who has been convicted of an aggravated felony is amenable to expedited administrative removal proceedings. See 8 U.S.C. § 1228(b)(1), (2), (4); 8 C.F.R. § 238.1. Expedited

3

removal proceedings are governed by DHS regulations set forth in 8 C.F.R. § 238.1. See 8 U.S.C. § 1228(b)(4) ("Proceedings before the Attorney General under this subsection shall be in accordance with such regulations as the Attorney General shall prescribe.").[1]

In contrast to standard removal proceedings, expedited removal proceedings do not involve a hearing before an immigration judge. Rather, a DHS immigration officer determines whether the alien is removable as an "aggravated felon[]" under 8 U.S.C. § 1227(a)(2)(A)(iii), and, upon finding the alien removable "by clear, convincing, and unequivocal evidence," issues a "Final Administrative Removal Order" without referring the case to an immigration judge, 8 C.F.R. § 238.1(d). Significantly, aliens subject to expedited removal are barred from discretionary forms of relief such as voluntary departure. See 8 U.S.C. § 1228(b)(5); Jankowski-Burczyk v. INS, 291 F.3d 172, 179 (2d Cir. 2002) (noting that alien removed pursuant to § 1228(b) "is categorically barred from receiving any form of

---

[1] Although 1228(b)(4) refers to the "Attorney General," the Homeland Security Act of 2002 transferred authority to promulgate regulations to the Department of Homeland Security. See Valdiviez-Hernandez v. Holder, 739 F.3d 184, 191 n.3 (5th Cir. 2013) (per curiam) (citing Pub. L. No. 107-296, sec. 441, 116 Stat. 2135, 2177). And, where functions are transferred by the Act to DHS, statutory references to the authority that was formerly responsible for those functions will be deemed to refer to DHS. See 6 U.S.C. § 557.

discretionary relief").[2]  An alien subject to expedited removal cannot administratively appeal an adverse decision to the Board of Immigration Appeals, see generally 8 U.S.C. § 1228(b)(3); 8 C.F.R. § 238.1, but has a 14-day period "to apply for judicial review under [8 U.S.C. § 1252]," 8 U.S.C. § 1228(b)(3).

In the fall of 2007, immigration officials placed Lopez-Collazo in expedited removal proceedings.  ICE agents prepared a Form I-851 Notice of Intent to Issue a Final Administrative Removal Order ("NOI"), charging that Lopez-Collazo was removable because both the 2007 assault offense and the 2005 theft offense qualified as aggravated felonies under 8 U.S.C. § 1227(a)(2)(A)(iii).  More specifically, the Government charged that the 2007 Maryland conviction for second degree assault constituted a "crime of violence," and therefore an aggravated felony, under 8 U.S.C. § 1101(a)(43)(F), and that the 2005 Maryland theft offense constituted "a theft offense . . . for which the term of imprisonment [is] at least one year," and therefore an aggravated felony under 8 U.S.C. § 1101(a)(43)(G).

---

[2] There are limited circumstances in which an alien subject to expedited removal may obtain review by an immigration judge. Such an alien may seek a determination that he is eligible for withholding of removal, which is non-discretionary.  Upon the alien's request, an asylum officer must perform a reasonable fear interview; the alien may seek review from an immigration judge of a negative reasonable fear determination.  See 8 C.F.R. § 208.31.

The NOI also contained a pre-printed section explaining the alien's "Rights and Responsibilities," including the right to legal representation and the right to contest the charges:

> You may choose to be represented (at no expense to the United States government) by counsel, authorized to practice in this proceeding. If you wish legal advice and cannot afford it, contact legal counsel from the list of available free legal services provided to you.
>
> You must respond to the above charges in writing . . . within 10 calendar days of service of this notice (or 13 calendar days if service is by mail). In your response you may: request, for good cause, an extension of time; rebut the charges stated above (with supporting evidence); request an opportunity to review the government's evidence; admit deportability; and/or designate the country to which you choose to be removed in the event that a final order of removal is issued . . . .
>
> You may seek judicial review of any final administrative order by filing a petition for review within 14 calendar days . . . or you may waive such appeal . . . .

J.A. 19.

The NOI was in English. An immigration officer personally served Lopez-Collazo with the NOI on October 5, 2007, and explained the form to him in English.

On the reverse side of the NOI form, there are three boxes presenting the alien's options in response to the charges set forth in the NOI. The first box is an acknowledgment of receipt of the NOI, which was signed by Lopez-Collazo and witnessed by the immigration officer who served the NOI. The second box states, "I WISH TO CONTEST" and offers, in checkbox fashion,

6

several possible bases for the alien to contest removal. The third box states, "I DO NOT WISH TO CONTEST." Lopez-Collazo signed under the following language contained in the third box:

> I admit the allegations and charge in this Notice of Intent. I admit that I am deportable and acknowledge that I am not eligible for any form of relief from removal. I waive my right to rebut and contest the above charges and my right to file a petition for review of the Final Removal Order. . . .

J.A. 163. Lopez-Collazo indicated on the form his preference that he be removed to Mexico. In November 2007, he was removed to Mexico.

Lopez-Collazo returned almost immediately, unlawfully crossing into Arizona in July 2008. Authorities did not discover Lopez-Collazo until 2014, when he was arrested in Maryland for driving under the influence and for resisting arrest. This time, however, rather than placing him in removal proceedings, the government charged him with a federal crime. In October 2014, Lopez-Collazo was indicted for being present unlawfully in the United States after having been removed, in violation of 8 U.S.C. § 1326.

B. Lopez-Collazo's Motion under § 1326(d) to Dismiss His Indictment for Illegal Reentry

Lopez-Collazo moved to dismiss the indictment, claiming that it was based on an invalid removal order. See 8 U.S.C. § 1326(d). Under § 1326(d), a defendant charged with illegal reentry is permitted to collaterally attack a prior removal

7

order. To prevail, the defendant must show that "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." Id. Because "[t]hese requirements are listed in the conjunctive, . . . a defendant must satisfy all three in order to prevail." United States v. El Shami, 434 F.3d 659, 663 (4th Cir. 2005) (internal quotation marks omitted). When the defendant satisfies all of § 1326(d)'s requirements, the district court must dismiss the illegal reentry charge. See id.

The government argued that Lopez-Collazo could not satisfy § 1326(d)'s exhaustion requirement because on the NOI form he expressly waived the right to contest the charges against him or seek judicial review of the removal order. Likewise, the government maintained that Lopez-Collazo could not establish, as required by § 1326(d), that he was improperly deprived of judicial review. An alien subject to an administrative order of removal entered after expedited proceedings is permitted to seek judicial review under 8 U.S.C. § 1252(a)(2)(D). See 8 U.S.C. § 1228(b)(3). In response, Lopez-Collazo, a native Spanish speaker who understood almost no English, argued that the waiver was invalid because neither the charges nor the waiver language

8

set forth on the NOI form were translated into Spanish or read to him by a Spanish translator.

The district court found it "patently clear" that Lopez-Collazo in 2007 "did not read or understand English to an extent sufficient to enable him to comprehend the NOI or the Waiver form, which were written in English, or to make a knowing and informed decision on the basis of forms that he could not read." Lopez-Collazo, 105 F. Supp. 3d at 512. Thus, the district court concluded that Lopez-Collazo's waiver was invalid.

Once the district court determined that the waiver was invalid, it concluded in turn that Lopez-Collazo was excused from having to show that he had exhausted his administrative remedies and that he had been deprived of judicial review, following an approach embraced by some appellate courts. See, e.g., United States v. Reyes-Bonilla, 671 F.3d 1036, 1045 (9th Cir. 2012); United States v. Sosa, 387 F.3d 131, 136-38 (2d Cir. 2004). The government does not contest the district court's ruling that the waiver was invalid or that the "invalid waiver excuses his burden to show that he exhausted available administrative remedies" and "suffices to show that the deportation proceedings improperly deprived him of the opportunity for judicial review." Lopez-Collazo, 105 F. Supp. 3d at 513. Accordingly, for purposes of this appeal, the first two requirements of § 1326(d) were satisfied by Lopez-Collazo,

and we focus solely on the final requirement for collaterally attacking an order of removal under § 1326(d): that "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d)(3).

Lopez-Collazo offered three reasons why the 2007 removal order was fundamentally unfair. First, he contended that the entry of the removal order was fundamentally unfair because his convictions under Maryland law for second-degree assault and theft of less than $500 did not constitute aggravated felonies under Descamps v. United States, 133 S. Ct. 2276 (2013), and United States v. Royal, 731 F.3d 333 (4th Cir. 2013), and he was therefore not removable as charged. Second, Lopez-Collazo contended that because his offenses were not aggravated felonies, immigration officials should have advised him in 2007 that he was eligible for "voluntary departure" from the United States which, unlike removal, cannot be a predicate for an illegal reentry conviction. See United States v. Ortiz-Lopez, 385 F.3d 1202, 1204 n.1 (9th Cir. 2004) (per curiam) ("[I]f [defendant] had departed voluntarily instead of being removed, he would not now be liable under 8 U.S.C. § 1326 for illegal reentry following removal, because he would never have been removed."). Finally, Lopez-Collazo argued that the 2007 removal order was "fundamentally unfair" because the government's failure to provide a Spanish translation of the charges in the NOI deprived him of a meaningful opportunity to seek voluntary

10

departure or otherwise challenge his removal order. In response, the government argued that Lopez-Collazo's pre-Descamps Maryland offenses qualified as aggravated felonies in 2007 and that therefore he was removable subject to expedited removal proceedings and ineligible for voluntary departure.

The district court agreed with Lopez-Collazo that the entry of the 2007 removal order was "fundamentally unfair" as required by § 1326(d). Specifically, the district court determined that the government's failure to provide a Spanish translation of the charges against him deprived him of a fundamental due process right to the "opportunity to be heard at a meaningful time and in a meaningful manner," Lopez-Collazo, 105 F. Supp. 3d at 515 (internal quotation marks omitted), under the standard articulated in United States v. El Shami, 434 F.3d 659, 664-65 (4th Cir. 2005). Reasoning that a "competent translator" is necessary "to ensure the fairness of proceedings to applicants who do not speak English," 105 F. Supp. 3d at 516 (internal quotation marks omitted), the district court concluded that Lopez-Collazo was not afforded "the opportunity to be heard at a meaningful time and in a meaningful manner," El Shami, 434 F.3d at 664-65 (internal quotation marks omitted). The district court explained:

> [T]he facts indisputably show that, to the extent Lopez-Collazo had any opportunity to be heard, the proceedings were conducted in a language he did not

11

> speak, and ended with him making an uncounseled, unknowing waiver of his ability to challenge the charges against him, either via available administrative remedies or upon petition for judicial review.

Lopez-Collazo, 105 F. Supp. 3d at 517. Thus, the court concluded that because Lopez-Collazo's due process rights were abridged in the removal process, the entry of the order of removal was fundamentally unfair.

Finally, the district court considered whether Lopez-Collazo suffered any prejudice, correctly recognizing that "[u]nder the fundamental fairness prong of a collateral attack on a prior removal order, a defendant must establish that 'the deficiencies in the deportation proceedings caused him actual prejudice.'" Id. at 518 (quoting El Shami, 434 F.3d at 665). The district court concluded that had Lopez-Collazo been afforded a fair and meaningful opportunity to be heard on the charges against him, there was a reasonable probability that he would have ultimately been granted voluntary departure. The district court explained that, "although Lopez-Collazo would have remained removable on other grounds, I am satisfied that there is a reasonable probability that an immigration judge would have granted a request for voluntary departure, in lieu of deportation." Id. at 519. To reach this conclusion, the district court applied current law rather than the law as it was understood at the time of his removal in 2007. The district

12

court held that under current law, Lopez-Collazo's Maryland assault conviction did not constitute an aggravated felony and that Lopez-Collazo therefore had been eligible for voluntary departure. Accordingly, the court granted Lopez-Collazo's motion and dismissed the indictment.

The government appeals the district court's order and seeks reinstatement of the indictment. In considering the district court's grant of a motion under § 1326(d) to dismiss an indictment, we review the court's legal conclusions de novo and its factual findings for clear error. See United States v. Woolfolk, 399 F.3d 590, 594 (4th Cir. 2005).

II.

We focus our attention on the fundamental fairness requirement of § 1326(d). "To demonstrate fundamental unfairness" in the entry of the removal order, "a defendant must show that (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." El Shami, 434 F.3d at 664 (internal quotation marks omitted). We consider each prong below.

A. Due Process

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v.

13

Davis, 533 U.S. 678, 693 (2001); see Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."). An alien "may not be deprived of his life, liberty or property without due process of law," meaning that "before his expulsion, he is entitled to notice of the nature of the charge and a hearing at least before an executive or administrative tribunal." Kwong Hai Chew v. Colding, 344 U.S. 590, 596-97 (1953). Due process requires, at a minimum, that an alien be given "(1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard." El Shami, 434 F.3d at 665 (internal quotation marks omitted).[3] Thus, an alien subject to expedited

---

[3] The expedited administrative removal scheme, in and of itself, "comports with the minimum requirements of due process." United States v. Benitez-Villafuerte, 186 F.3d 651, 657-58 (5th Cir. 1999); see United States v. Rangel de Aguilar, 308 F.3d 1134, 1138 (10th Cir. 2002); United States v. Garcia-Martinez, 228 F.3d 956, 960-63 (9th Cir. 2000). The statutory administrative removal scheme mandates, among other things, that the alien be "given reasonable notice of the charges," 8 U.S.C. § 1228(b)(4)(A); be allowed to secure representation, see id. § 1228(b)(4)(B); and be given "a reasonable opportunity to inspect the evidence and rebut the charges," id. § 1228(b)(4)(C). Additionally, the statute prohibits the Attorney General from executing an order of removal until 14 days have passed from the issuance of the order so that the alien may seek judicial review under § 1252. See id. § 1228(b)(3).

14

removal is entitled to "the opportunity to be heard at a meaningful time and in a meaningful manner." Id. at 664-65 (internal quotation marks omitted).

Such a meaningful opportunity does not exist, however, when the alien does not understand the proceedings without the aid of a translator. "A non-English-speaking alien has a due process right to an interpreter at her deportation hearing because, absent an interpreter, a non-English speaker's ability to participate in the hearing and her due process right to a meaningful opportunity to be heard are essentially meaningless." Nazarova v. INS, 171 F.3d 478, 484 (7th Cir. 1999); see Marincas v. Lewis, 92 F.3d 195, 204 (3d Cir. 1996) ("[A] competent translator" is critical "to ensure the fairness of proceedings to applicants who do not speak English."). An alien's due process right to a meaningful opportunity to be heard would be pointless in a removal proceeding wherein the alien and decision-maker could not understand each other. See Marincas, 92 F.3d at 204.

The district court concluded that Lopez-Collazo was denied an "opportunity to be heard at a meaningful time and in a meaningful manner," El Shami, 434 F.3d at 664-65 (internal quotation marks omitted), based on "abundant evidence that . . . Lopez-Collazo required translation assistance in order to understand the NOI, the Waiver, and legal proceedings," Lopez-

15

Collazo, 105 F. Supp. 3d at 516. Thus, in view of the fact that "the proceedings were conducted in a language he did not speak, and ended with him making an uncounseled, unknowing waiver of his ability to challenge the charges against him," id. at 517, the district court found that Lopez-Collazo established that his due process rights were violated by a defect in his removal proceedings.

The government concedes that the expedited removal proceedings in this case did not comport with due process on the alternative basis that in failing to provide Lopez-Collazo with a Spanish translation of the NOI, the DHS failed to comply with its own procedures:

> The Service must either provide the alien with a written translation of the Notice of Intent or explain the contents of the Notice of Intent to the alien in the alien's native language or in a language that the alien understands.

8 C.F.R. § 238.1(b)(2)(v). The government allows that DHS's failure to adhere to its own regulations was a violation of due process that enabled Lopez-Collazo to establish the first prong of § 1326(d)'s fundamental unfairness requirement.

For the reasons stated by the district court, we agree that DHS's failure to afford Lopez-Collazo a Spanish translation of the charges in the NOI and his rights rendered Lopez-Collazo's removal proceedings defective and abridged his due process rights. Accordingly, we turn to the prejudice inquiry. See

16

United States v. Gomez, 757 F.3d 885, 892-93 (9th Cir. 2014) ("Once a due process or a qualifying regulatory violation has been established, we evaluate the third prong of § 1326(d) (that the deportation order was 'fundamentally unfair') as a 'prejudice' inquiry.").

## B. Prejudice

To establish fundamental unfairness under § 1326(d), a defendant must show that he <u>suffered actual prejudice as a result of the due process violations</u> in the removal proceedings. See <u>El Shami</u>, 434 F.3d at 665 ("[A defendant] has to show under the fundamental unfairness requirement . . . that the deficiencies in the deportation proceedings caused him actual prejudice."). For Lopez-Collazo to meet the actual prejudice requirement, he must demonstrate "that, but for the errors complained of, there was a reasonable probability that he would not have been deported." <u>Id.</u> This is not a generalized showing of prejudice; rather, the defendant must link the actual prejudice he claims to have suffered to the specific due process violation at issue. See <u>United States v. Fernandez-Antonia</u>, 278 F.3d 150, 159 (2d Cir. 2002) ("[Defendant] must show both a fundamental procedural error and prejudice resulting from <u>that error</u>." (emphasis added)); <u>Garcia-Martinez</u>, 228 F.3d at 963 (explaining that a defendant "must demonstrate that prejudice resulted from <u>the asserted procedural defect</u>" (emphasis added)).

17

The district court concluded that "but for the errors complained of"—i.e., the lack of a Spanish translation of the NOI's charges against him or an explanation of his right to challenge the charges and obtain legal counsel—"there was a reasonable probability that Lopez-Collazo would have been granted voluntary departure, . . . thereby avoiding deportation" and prosecution under § 1326. Lopez-Collazo, 105 F. Supp. 3d at 530-31. The court's conclusion presupposed that once Lopez-Collazo successfully challenged the classification of his prior state convictions as aggravated felonies and established eligibility for discretionary relief, there was a "reasonable probability" that an immigration judge would have granted him voluntary departure on the basis that the "positive equities" of Lopez-Collazo's case outweighed the negative ones. Id. at 530.

We cannot agree. As explained below, the district court's prejudice analysis necessarily rests on the flawed conclusion that had Lopez-Collazo challenged the charges set forth in the NOI in 2007, the conviction for second-degree assault in Maryland would not have been considered an aggravated felony. But circuit precedent at the time of Lopez-Collazo's administrative removal in 2007 tells us otherwise.

1. Framework for Determining if an Offense Constitutes an "aggravated felony" under the Immigration and Nationality Act

18

"When the Government alleges that a state conviction qualifies as an 'aggravated felony' under the INA, we generally employ a 'categorical approach' to determine whether the state offense is comparable to an offense listed in the INA." Moncrieffe v. Holder, 133 S. Ct. 1678, 1684 (2013); see Nijhawan v. Holder, 557 U.S. 29, 33–38 (2009). "Although the categorical approach was first introduced in the context of criminal law, it 'has a long pedigree in our Nation's immigration law.'" Etienne v. Lynch, 813 F.3d 135, 142 (4th Cir. 2015) (quoting Moncrieffe, 133 S. Ct. at 1685). "Under this approach we look not to the facts of the particular prior case, but instead to whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony." Moncrieffe, 133 S. Ct. at 1684 (internal quotation marks omitted). "The reason is that the INA asks what offense the noncitizen was 'convicted' of, . . . not what acts he committed." Id. at 1685 (quoting 8 U.S.C. § 1227(a)(2)(A)(iii)). An alien's actual conduct is irrelevant to the inquiry, as the adjudicator "must presume that the conviction rested upon nothing more than the least of the acts criminalized" under the state statute. See id. at 1684 (internal quotation marks and alterations omitted).

In a limited class of cases, of course, it is appropriate for a court to look beyond the fact of conviction in deciding

whether an offense constitutes a violent felony.  See Taylor v. United States, 495 U.S. 575, 602 (1990).  This "modified categorical approach," applies to "state statutes that contain several different crimes, each described separately." Moncrieffe, 133 S. Ct. at 1684.  In such cases, "a court may determine which particular offense the noncitizen was convicted of by examining the charging document and jury instructions, or in the case of a guilty plea, the plea agreement, plea colloquy, or some comparable judicial record of the factual basis for the plea."  Id. (internal quotation marks omitted).

At the time of Lopez-Collazo's removal in 2007, this circuit had nearly ten years of precedent applying the modified categorical approach to determine whether a given Maryland assault conviction constituted a violent crime.  In 1998, we considered whether a conviction for common law assault in Maryland constituted a crime of violence for purposes of the career offender guideline set forth in U.S.S.G. § 4B1.1.  See United States v. Kirksey, 138 F.3d 120, 122 (4th Cir. 1998).  We concluded that a Maryland assault conviction was not categorically a crime of violence because "an assault is an attempted battery" and, in turn, a battery under Maryland law "embraces a wide range of conduct, including kissing without consent, touching or tapping, jostling, and throwing water upon another."  Id. at 125 (internal quotation marks omitted).

20

Therefore, because it was "unclear whether . . . the conduct encompassed in the crime of battery [categorically] constitute[d] the use of physical force against the person of another to the degree required to constitute a crime of violence," id., we held that under Taylor we were obligated to "look beyond the definition of the crime to examine the facts contained in the charging document," id. at 124.

Shortly thereafter, the en banc court affirmed this approach in United States v. Coleman, 158 F.3d 199, 200 (4th Cir. 1998) (en banc), which applied the modified categorical approach to determine whether a common-law assault conviction under Maryland law was a "violent felony" for purposes of the Armed Career Criminal Act ("ACCA"). Noting that it was "unable to conclude that a Maryland conviction for common-law assault is per se a violent felony within the meaning of § 924(e)(2)(B)(i)," the en banc court concluded that "the district court properly looked beyond the fact of conviction and the elements of the offense to determine whether the particular offense of which Coleman was convicted was a violent felony." Id. at 202. In particular, we affirmed the district court's consideration of the probable cause affidavit which set forth facts showing that "Coleman's offense involved the use, attempted use, or threatened use of physical force against the victim." Id. at 203.

21

And again, in 2006, we reaffirmed under Kirksey and Coleman the propriety of looking past the fact of conviction and the definition of the offense to determine if a Maryland assault conviction was a violent felony under the ACCA. See United States v. Simms, 441 F.3d 313, 314 (4th Cir. 2006). In Simms, we concluded that the defendant's Maryland assault conviction constituted a violent felony for purposes of the ACCA based on the information set forth in the charging papers. See id. at 317. We rejected the argument that the Supreme Court's 2005 decision in Shepard v. United States, 544 U.S. 13 (2005), undermined Coleman and Kirksey because Shepard specifically prohibited consideration of "police reports or complaint applications," Shepard, 544 U.S. at 16. Because the victim's application was "explicitly incorporated into Maryland's statement of charges against Simms," Simms, 441 F.3d at 317, we concluded that "Shepard does not call into question our prior decisions" because "Shepard specifically allows reference to the charging document," id. at 318.

Even after 2007, this court continued to apply the modified categorical approach to Maryland assault convictions in these circumstances. See United States v. Donnell, 661 F.3d 890, 893 (4th Cir. 2011); United States v. Taylor, 659 F.3d 339, 345-46 (4th Cir. 2011); United States v. Alston, 611 F.3d 219, 220-21 (4th Cir. 2010); United States v. Harcum, 587 F.3d 219, 224 (4th

22

Cir. 2009). Harcum and Alston, in particular, are illustrative of this court's long-established approach. In Harcum, the defendant's alleged predicate violent felony was a conviction for second-degree assault in violation of Md. Code Ann., Crim. Law §§ 3-201, -203. We reiterated that an assault conviction under § 3-201 is not a violent crime per se, and that "the question of whether Harcum's assault conviction was for [a] . . . violent felony cannot be determined solely from the statutory definition of the offense." 587 F.3d at 224. Citing Simms, we applied the modified categorical approach and examined the Information filed against Harcum, which ultimately "lack[ed] sufficient factual allegations to support classifying Harcum's second-degree assault offense as an ACCA violent felony." Id.

Similarly, in Alston, the court considered whether the district court properly found that the defendant's Maryland conviction for second-degree assault, see Md. Code Ann., Crim. Law § 3-203, was a "violent felony" under the ACCA when the conviction was obtained via an Alford plea, see 611 F.3d at 222. The court explained that the modified categorical approach was necessary to resolve this question because "under Maryland law, second-degree assault encompasses several distinct crimes, some of which qualify as violent felonies and others of which do not." Id. at 223; see Johnson v. United States, 559 U.S. 133, 144 (2010) (noting that "[w]hen the law under which the

23

defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not, the 'modified categorical approach' that we have approved permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record" (internal quotation marks and citation omitted)). To support its conclusion that Alston's conviction was for a violent crime, however, the district court relied on the transcript of the Alford plea proceeding. The court held that "Shepard prevents sentencing courts from assessing whether a prior conviction counts as an ACCA predicate conviction by relying on facts neither inherent in the conviction nor admitted by the defendant," 611 F.3d at 226, which is the case in the context of an Alford plea, wherein "the defendant does not confirm [the proffered] factual basis," id. at 227 (internal quotation marks omitted).

Thus, it is clear that at the time of removal proceedings, there was no question but that the modified categorical approach applied. The district court recognized as much, observing that "in 2007 the Fourth Circuit applied the modified categorical approach when called upon to analyze Maryland's crime of second-degree assault" pursuant to a "line of cases" that was "quite substantial." Lopez-Collazo, 105 F. Supp. 3d at 521.

24

2.    Lopez-Collazo's Second Degree Assault Conviction Was Properly Categorized as an Aggravated Felony Under the Modified Categorical Approach Followed by Circuit Precedent in 2007

As detailed above, in 2007 this court would have used the modified categorical approach to determine if Lopez-Collazo's conviction for second-degree assault in Maryland was a crime of violence since the Maryland statute "encompasses several distinct crimes, some of which qualify as violent felonies and others of which do not." Alston, 611 F.3d at 223. Here, the formal charging document expressly incorporated the probable cause affidavit which provided that Lopez-Collazo "attempted to run down" law enforcement officers with his vehicle and kicked and struck the officers several times as they were trying to pull him from the vehicle and place him in handcuffs. J.A. 60. The plea colloquy confirmed all of these facts as well. Accordingly, it is clear that, under the law as it was understood in 2007, Lopez-Collazo's second-degree assault conviction constituted a "crime of violence" as defined in 18 U.S.C. § 16(a) ("an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another"), which, in turn, made it an "aggravated felony" under the INA. See 8 U.S.C. § 1101(43)(F). And, as we noted previously, an illegal alien who has committed an aggravated felony is amenable to expedited removal, see 8

25

U.S.C. § 1228(b), and ineligible for discretionary forms of relief such as voluntary departure, see 8 U.S.C. § 1228(b)(5).

Accordingly, Lopez-Collazo cannot show that "there was a reasonable probability that he would not have been deported." El Shami, 434 F.3d at 665. Since Lopez-Collazo's ability to demonstrate prejudice hinges on his eligibility for voluntary departure in 2007, see Ortiz-Lopez, 385 F.3d at 1204 n.1; 8 U.S.C. § 1326(a)(1) (applying to aliens who reenter after having been previously removed or after having departed while a removal order was outstanding), his case for "fundamental unfairness" collapses "[b]ecause his deportation was a foregone conclusion" at that time, Garcia-Martinez, 228 F.3d at 963; see United States v. Lopez-Vasquez, 227 F.3d 476, 485 (5th Cir. 2000) ("[I]f the defendant was legally deportable and, despite the INS's errors, the proceeding could not have yielded a different result, the deportation is valid for purposes of section 1326." (internal quotation marks omitted)).

3. The District Court's Application of Current Law to Determine Whether Lopez-Collazo's State Convictions Were Properly Categorized as Aggravated Felonies in 2007

Even though the district court recognized that Lopez-Collazo's conviction qualified as an aggravated felony under existing law in 2007, it applied current law under Descamps to the prejudice analysis. The government has not challenged the premise that Lopez-Collazo's assault conviction would not

26

constitute an "aggravated felony" under current law. In United States v. Royal, we held that, under Descamps, a Maryland second-degree assault offense is not amenable to the modified categorical approach because it includes indivisible elements, see 731 F.3d at 341-42, thus abrogating Harcum, Simms, Coleman and Kirksey, see United States v. Aparicio-Soria, 740 F.3d 152, 156 (4th Cir. 2014) (en banc). Since this court has long recognized that this offense is not categorically a crime of violence, see Royal, 731 F.3d at 342, a conviction for second-degree assault under Maryland law can no longer qualify as an aggravated felony.

It is somewhat difficult to discern the district court's basis for applying current law to determine whether Lopez-Collazo would not have been removed in 2007 but for the procedural defects at issue. As we understand the district court's reasoning, it would assess "fundamental fairness . . . under the law governing an alien's removal at the time of the removal proceeding," Lopez-Collazo, 105 F. Supp. 3d at 523, unless post-removal precedent later reveals that the prevailing view of the law at the time of removal was erroneous. According to the district court, "it would [not] be error to apply Descamps 'retroactively,' because Descamps merely clarified existing law. . . . [T]here has been no change in the applicable

27

law in terms of the proper analysis to determine whether defendant's prior State offenses were aggravated felonies." Id.

The court's approach, however, impermissibly disconnects the prejudice analysis from the specific due process violation identified by the court. The defendant's burden is to show that actual prejudice resulted from the due process violation at issue. In this case, the specific due process violation at issue was the failure to translate the NOI so that Lopez-Collazo could understand the charges against him and his rights and responsibilities during removal proceedings. Had the charges and his rights been explained to Lopez-Collazo, he would have had the opportunity to challenge the classification of his assault conviction as an aggravated felony at the time of his removal. The defect in the removal proceedings and the resulting prejudice must be linked. See Fernandez-Antonia, 278 F.3d at 159; Garcia-Martinez, 228 F.3d at 963. There must be a "reasonable probability" that if the proceedings had been error-free, the defendant would have obtained relief from removal. See El Shami, 434 F.3d at 665. Logically, therefore, prejudice under § 1326(d) must be "judged at the time of the [agency's removal] decision." United States v. Villanueva-Diaz, 634 F.3d 844, 852 (5th Cir. 2011). As at least two Circuit Courts of Appeal have recognized, this is so even if the law is later changed:

28

Under the law in effect at the time of his removal in 1998, [defendant's] prior possession offenses qualified as aggravated felonies. See, e.g., Matter of Yanez-Garcia, 23 I. & N. Dec. 390, 398 (BIA 2002) (holding that felony possession qualifies as an aggravated felony); Fernandez v. Mukasey, 544 F.3d 862, 874 (7th Cir. 2008) (holding that multiple state possession convictions make an alien removable as an aggravated felon). Though the law has since changed and [defendant's] possession offenses no longer constitute aggravated felonies . . . , the law in effect at the time of [defendant's] challenged removal is what matters to our analysis. Since [defendant's] offenses constituted aggravated felonies in 1998, [he] . . . could [not] . . . have applied for discretionary relief . . . .

United States v. Baptist, 759 F.3d 690, 697-98 (7th Cir. 2014); see also Gomez, 757 F.3d at 898-99 (9th Cir. 2014) ("[In deciding whether] defendant [carried] the burden of proving prejudice under § 1326(d)(3)," courts "look to the law at the time of the deportation proceedings.").

The district court's application of current law is problematic for another reason. In "applying post-removal-proceeding precedent to determine whether [the] prior entry of a removal order [against Lopez-Collazo] was fundamentally unfair," Lopez-Collazo, 105 F. Supp. 3d at 525, the district court implicitly determined that the categorization of Lopez-Collazo's assault conviction as an aggravated felony was itself a due process violation, independent from the failure to translate the NOI to Lopez-Collazo. Indeed, Lopez-Collazo argues that the district court properly dismissed the indictment "because ICE

29

officers misapplied the law" by administratively removing him "for having aggravated felony convictions" which "depriv[ed] him of the opportunity to obtain voluntary departure." Brief of Appellee at 17.

Although an error of law, without more, "will ordinarily not rise to the level of a due process violation," United States v. Torres, 383 F.3d 92, 104 (3d Cir. 2004), there might be circumstances under which some courts would conclude that a misapplication of the law as it existed at the time—not as understood in light of subsequent judicial decisions—led to a due process violation, see United States v. Pallares-Galan, 359 F.3d 1088, 1100-01 (9th Cir. 2004). Under such circumstances, it might be possible for the court to conclude that "but for" the misapprehension of the law, defendant would not have been removed. But even these courts do not require the agency to be clairvoyant, "inform[ing] the alien of a future interpretation of the law" regarding "what the meaning of the law always was in some theoretical way." United States v. Vidal-Mendoza, 705 F.3d 1012, 1018-19 (9th Cir. 2013) (internal quotation marks omitted).

But in Lopez-Collazo's case, there was no such misapplication of the law as it stood in 2007. The administrative removal order was actually premised on the faithful application of existing law. Under the law as it was

30

understood at the time of Lopez-Collazo's removal, he cannot have suffered prejudice because he was understood to be statutorily ineligible for relief from removal, and therefore there was no reasonable probability that he would not have been deported.

III.

For the foregoing reasons, we conclude that Lopez-Collazo failed to establish that his order of removal was "fundamentally unfair" under § 1326(d). Accordingly, we reverse the order of the district court dismissing the indictment and remand the case with instructions that the indictment be reinstated.

REVERSED AND REMANDED

GREGORY, Circuit Judge, dissenting:

I write only to address the question of whether misapplication of the law, as we now understand it, can constitute a due process violation that causes prejudice. In my view, it can, and I would affirm on that basis.

As the majority recognizes, "a conviction for second-degree assault under Maryland law can no longer qualify as an aggravated felony." Maj. Op. 27. Nevertheless, "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." Rivers v. Roadway Exp., Inc., 511 U.S. 298, 312-13 (1994). Thus, our decision in United States v. Royal, 731 F.3d 333 (4th Cir. 2013), did not "change[]" the meaning of Maryland's second-degree assault offense; instead, we decided what the statute "had always meant." See Rivers, 511 U.S. at 313 n.12. And misapplication would constitute a due process violation. See United States v. Pallares-Galan, 359 F.3d 1088, 1100-01 (9th Cir. 2004).

As we have seen in recent decisions, the Supreme Court has questioned the constitutionality of a decades-long tough-on-crime mentality. E.g., Johnson v. United States, 135 S. Ct. 2551 (2015); Miller v. Alabama, 132 S. Ct. 2455 (2012). The Court is also concerned with the implications that such decisions have on those who were convicted under the "old

32

rules." E.g., <u>Welch v. United States</u>, 136 S. Ct. 1257 (2016); <u>Montgomery v. Louisiana</u>, 136 S. Ct. 718 (2016), as revised (Jan. 27, 2016).

"A man should never be ashamed to own he has been in the wrong, which is but saying, in other words, that he is wiser to-day than he was yesterday." Alexander Pope, Thoughts on Various Subjects, <u>reprinted in</u> 5 Alexander Pope & William Roscoe, The Works of Alexander Pope, Esq. 377, 378 (1847). Although equally entitled to the constitutional protections of due process, Lopez-Collazo had the unfortunate fate of being sentenced in our "yesterday" in a way we now know to be improper. We should not leave him to suffer given our enlightenment today.

Accordingly, I would affirm the district court.