**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-4224**

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

GREGORY GARCIA, a/k/a Gregory Garcia Perez,

Defendant − Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Max O. Cogburn, Jr., District Judge. (3:15−cr−00040−MOC−DSC−1)

Argued: March 30, 2017        Decided: May 2, 2017

Before SHEDD, DUNCAN, and AGEE, Circuit Judges.

Affirmed by published opinion. Judge Duncan wrote the opinion, in which Judge Shedd and Judge Agee joined.

**ARGUED:** William Robinson Heroy, GOODMAN, CARR, LAUGHRUN, LEVINE & GREENE, PLLC, Charlotte, North Carolina, for Appellant. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Chris Greene, GREENE & ASSOCIATES, INC., Charlotte, North Carolina, for Appellant. Jill Westmoreland Rose, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

DUNCAN, Circuit Judge:

Defendant-Appellant Gregory Garcia appeals his conviction on two counts of unlawful procurement of naturalization, in violation of 18 U.S.C. § 1425(a). On appeal, Garcia argues that the district court erred by (1) denying his post-trial motions for judgment of acquittal and a new trial, and (2) taking judicial notice of a portion of the U.S. Citizenship and Immigration Services' ("USCIS") website. For the reasons that follow, we affirm.

I.

The jury convicted Garcia for giving false and misleading statements about his criminal history during the naturalization process, on or about November 9, 2006 (Count 1) and August 14, 2007 (Count 2). Garcia's appeal turns on the sequence of the following relevant events, which we recount in detail below: (1) on May 31, 2006, Garcia first met with a USCIS officer; (2) on August 23, 2006 and September 15, 2006, Garcia was indicted on and arrested for federal fraud charges; (3) on November 9, 2006, Garcia appeared for a follow-up meeting with a second USCIS officer; and (4) on August 14, 2007, Garcia took his naturalization oath.

A.

Garcia immigrated to the United States in 1993 and became a lawful permanent resident. In early 2005, he filed an application to become a naturalized citizen. The naturalization process required Garcia to submit a standardized application form

2

("Form N-400"), appear in person for questioning, and pass tests designed to elicit his knowledge of U.S. history and government, as well as written and spoken English.

On May 31, 2006, Garcia appeared for an in-person meeting with USCIS Officer Jason Rucienski. During the meeting, Officer Rucienski tested Garcia on his civics and English knowledge, and reviewed Garcia's criminal history. Garcia passed the civics examination, but failed the language test. Officer Rucienski provided Garcia with an "interview results" form, explaining that Garcia had failed the language test and would have a second chance to take it. J.A. 685. He also informed Garcia that he needed to bring a certified record concerning an incident in his criminal history to the next meeting.

On August 23, 2006, a federal grand jury indicted Garcia on charges related to a conspiracy involving credit-card and identity fraud. Authorities arrested Garcia on September 15, 2006, and he made his initial appearance in federal court that day. He later pleaded guilty to two of the charges. Slightly more than a month after Garcia's arrest, USCIS sent Garcia a notice scheduling him to appear on November 9, 2006, for a "Re-Examination for Reading, Writing, or Speaking English," and "Naturalization Re-Interview." J.A. 689.

On November 9, 2006, Garcia appeared for a meeting with USCIS Officer Kevin Winn. Officer Winn retested Garcia on his English skills, and Garcia passed. Officer Winn also reviewed with Garcia his Form N-400. Questions 16 and 17 asked whether Garcia had ever been "arrested, cited, or detained by any law enforcement officer" or "charged with committing any crime." J.A. 678. Garcia listed two criminal incidents in New Jersey from the late 1990s, but he did not disclose the federal charges for which he

3

had been indicted and arrested several months earlier. Question 23 asked whether Garcia had ever given false or misleading information to any U.S. official while applying for any immigration benefit, and Garcia checked the box designated as no. Garcia then signed Form N-400, certifying under penalty of perjury that the contents of the form were true and correct. Officer Winn recommended Garcia's application for approval.

USCIS approved Garcia's application in July 2007 and scheduled him to appear for a naturalization oath ceremony on August 14, 2007. The ceremony notice included Form N-445, asking whether Garcia had been, *inter alia*, cited, arrested, indicted, or convicted of any crime "AFTER the date you were first interviewed." J.A. 696. Although Garcia checked yes, he told USCIS Officer Edna Falls at the oath ceremony that his only intervening offense was a speeding violation, which Officer Falls noted on the form. Garcia never disclosed his August 2006 indictment or September 2006 arrest on federal charges. Garcia signed Form N-445 on August 14, 2007, certifying that it was true and correct. He became a naturalized citizen that day.

B.

On February 19, 2015, federal prosecutors charged Garcia with two counts of violating § 1425(a), based on his knowing failure to disclose his federal charges. Garcia pleaded not guilty and proceeded to trial.

1.

At the close of evidence, Garcia moved for judgment of acquittal. As to count one, he argued that there was insufficient evidence he was asked about his criminal history during his interview with Officer Winn on November 9, 2006. As to count two,

4

he argued that his May 2006 meeting with Officer Rucienski did not qualify as a naturalization "interview," but only an examination on the civics and language portions of the process. Because, on this theory, he was not "interviewed" until November 9, 2006 with Officer Winn, his Form N-445 accurately stated that he had not been arrested or charged with any crimes after the date he was "first interviewed."

The district court denied the motion based on the evidence presented at trial. Supporting count one, Officer Winn testified that Garcia never disclosed his pending federal charges during the November interview, though he could not tell from the completed form whether he or the prior officer had asked particular questions. The government also introduced the Form N-400 that Garcia signed on November 9, 2006, which showed that he both falsely failed to acknowledge his recent federal charges, and certified that his answers were true and correct.

As relevant to count two, the government elicited testimony supporting the view that Garcia was first interviewed on May 31, 2006. For example, the government's case agent testified that in May 2006, Officer Rucienski was the first USCIS officer to interview Garcia, and Officer Winn testified that he was the second USCIS officer to interview Garcia. USCIS Officer Beth Barbee testified that if an applicant fails the civics or language test during his "initial interview," he is scheduled to return for "a second interview." J.A. 173–74. She confirmed that the language and civics testing is part of the "naturalization interview." J.A. 194–95. Finally, Officer Falls testified that she reviewed Garcia's answer to the question on Form N-445 asking whether there had been any new

criminal incidents after his first interview and that Garcia reported only a speeding citation.

2.

Before closing statements, the district court inquired about what constitutes an "N-400 interview," and reported that his law clerk found information on the USCIS website generally describing the naturalization process. J.A. 476–78. The relevant portion of the website stated: "During your naturalization interview, a USCIS Officer will ask you questions about your application and background. You will also take an English and civics test unless you qualify for an exemption or waiver." J.A. 738.2. Garcia objected to the district court's consideration of the website excerpt, but the district court concluded it could take judicial notice of the information. Garcia subsequently asked the district court to take judicial notice of the USCIS Policy Manual, which the district court agreed to do. The district court took judicial notice of a portion of the manual that provided that the naturalization process includes all factors relating to eligibility, including in-person interviews and language and civics testing. The court read all of the judicially noticed facts to the jury.

The jury convicted Garcia on both counts of the indictment, and the district court denied his post-trial motions. Garcia timely appealed.

II.

Under 18 U.S.C. § 1425(a), it is unlawful to knowingly procure or attempt to procure naturalization or citizenship in a manner contrary to law. The government can

6

prove a violation by showing that the defendant "knowingly misstated his criminal record on his application or in his interview." *United States v. Pasillas-Gaytan*, 192 F.3d 864, 868 (9th Cir. 1999).

On appeal, Garcia argues that the district court erred by (1) denying his motions for judgment of acquittal and a new trial, and (2) taking judicial notice of the website excerpt. We discuss each argument in turn.

A.

Garcia's arguments are the same for both his motion for judgment of acquittal and for a new trial: his convictions cannot stand because he did not knowingly make a false statement in November 2006 or August 2007. We review the district court's denial of a motion for judgment of acquittal de novo. *United States v. White*, 810 F.3d 212, 228 (4th Cir. 2016). Viewing the evidence in the light most favorable to the government, we ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We review the district court's denial of a motion for a new trial for abuse of discretion, but assess any legal determinations de novo. *United States v. Parker*, 790 F.3d 550, 558 (4th Cir. 2015). Under the standard for a new trial, the district court should only overturn a jury verdict in the "rare circumstance" when the verdict is against the great weight of the evidence. *United States v. Smith*, 451 F.3d 209, 217 (4th Cir. 2006). We have little hesitation concluding that the record contains sufficient evidence of Garcia's knowing misstatements.

7

1.

As to count one, Garcia contends that there was no evidence Officer Winn actually asked him questions about his criminal history on November 9, 2006, and so the jury's conclusion that he knowingly misstated his criminal history on that date was unsupported by the record. We disagree.

By signing his Form N-400 on November 9, Garcia attested that he knew the contents of the form and that they were "true and correct." J.A. 680. They were not. The form omits any reference to Garcia's August indictment or September arrest and affirms that Garcia had never given false or misleading information to any U.S. official while trying to gain an immigration benefit. Garcia's criminal intent can be inferred from the fact that he listed two prior criminal incidents from years earlier, but not the pending charges that began several months before the interview. Moreover, Officer Rucienski directed Garcia to bring documentation concerning his prior criminal history with him to the November 9, 2006 meeting, indicating that Garcia knew he needed to keep his criminal history updated. For these reasons, even without evidence that Officer Winn specifically asked Garcia questions about his criminal history, the jury had sufficient evidence to reasonably conclude that Garcia knowingly misstated his criminal record when he signed the inaccurate Form N-400 on November 9, 2006.[1]

---

[1] Garcia's argument that he lacked criminal intent because he did not understand written English is without merit. Garcia passed the written English exam, and Officer Winn testified that Garcia had no trouble communicating in English during the interview.

2.

The basis for count two is Garcia's attestation on Form N-445 that the only time he had been arrested or cited since the date he was "first interviewed" was for speeding. J.A. 697. Garcia contends that his first interview was the interview with Officer Winn on November 9, 2006, because the meeting with Officer Rucienski on May 31, 2006 did not count as an "interview," but only an examination of his English and civics knowledge. Under this view, his August 2006 indictment and September 2006 arrest occurred before the date he was "first interviewed," making the statement on his Form N-445 accurate. This argument is unavailing. The government presented sufficient evidence for the jury to conclude that Officer Rucienski interviewed Garcia on May 31, 2006, and Garcia's counsel acknowledged as much at oral argument.[2]

The evidence showed that: (1) Officer Rucienski provided Garcia with a form titled "interview results" after their meeting, J.A. 685; (2) Garcia was instructed to appear for a "Naturalization *Re-interview*" with Officer Winn, J.A. 689 (emphasis added); and (3) Officer Winn testified that he was the second person to interview Garcia, *see* J.A. 388–89. Furthermore, Officer Barbee's testimony that the language and civics tests were part of the naturalization interview supports the conclusion that Officer Rucienski interviewed Garcia even if he did nothing more than conduct those tests. But

---

[2] The government contends that even if the November interview with Officer Winn were the first "interview," Garcia still lied because he failed to disclose that he pleaded guilty to the fraud charges after that interview. Because we conclude that there was sufficient evidence that Garcia was interviewed in May, we need not reach this alternative theory.

even on a narrow view of what constitutes an "interview," the evidence indicated that Officer Rucienski did more than just conduct testing. Officer Rucienski instructed Garcia to bring additional documents concerning his criminal history to the follow-up meeting, which implies that Officer Rucienski interviewed Garcia concerning his criminal history in May 2006. Therefore, Garcia's Form N-445, which failed to disclose his indictment and arrest that occurred after this interview, was not accurate.[3]

The jury also had before it sufficient evidence to conclude that Garcia acted knowingly. The documents Garcia received from USCIS indicated that Officer Rucienski had interviewed Garcia in May 2006, and Garcia knew that he had not previously disclosed his federal charges. His failure to do so at the oath ceremony on Form N-445, despite disclosing a speeding ticket, supports the inference that Garcia acted with the requisite intent.

In sum, substantial evidence supported Garcia's convictions on counts one and two. Therefore, the district court properly denied Garcia's motions for judgment of acquittal and a new trial.

---

[3] Garcia argues that the government's case agent testified on cross-examination that she could not identify a false statement on his Form N-445. But the agent made this statement in the course of questioning from Garcia's counsel that *assumed* Garcia was not interviewed until November 9, 2006. *See* J.A. 320–23. As discussed above, the government presented sufficient evidence to demonstrate that Garcia was in fact interviewed in May 2006. And on re-direct, the case agent testified that the November interview was Garcia's second interview. *See* J.A. 364–67.

Finally, Garcia contends that the district court erred when it took judicial notice of a portion of the USCIS website because the website supported the government's view of an "interview." We review a district court's evidentiary rulings for abuse of discretion. *United States v. Johnson*, 617 F.3d 286, 292 (4th Cir. 2010). Erroneous evidentiary rulings are harmless so long as we are assured that they did not substantially sway the judgment. *Id.* We find no merit in Garcia's argument.

Under Federal Rule of Evidence 201(b), the district court may judicially notice a fact that is not subject to reasonable dispute when it is either (1) generally known within the district court's jurisdiction, or (2) can be readily determined from an indisputably accurate source. This court and numerous others routinely take judicial notice of information contained on state and federal government websites. *See, e.g.*, *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004); *Garling v. U.S. Envtl. Prot. Agency*, 849 F.3d 1289, 1297 n.4 (10th Cir. 2017); *Swindol v. Aurora Flight Sci. Corp.*, 805 F.3d 516, 519 (5th Cir. 2015).

Here, the USCIS website is a source whose accuracy cannot reasonably be questioned. The portion of the website as to which the district court took judicial notice simply described in general terms the process for naturalization. Garcia's contention that the district court's notice of the excerpt effectively credited the government's interpretation of an "interview" is unavailing. The district court took judicial notice of the *facts* contained on the website, not any *interpretation* of what constitutes a naturalization interview. The excerpt does not purport to define an "interview," and it is

11

at least susceptible to multiple readings.  Garcia has not identified anything he believes to be inaccurate about the excerpt, relying instead on his concern that the jury may have inferred something detrimental to his case from its structure.  But a document does not become inappropriate for judicial notice just because a jury could draw inferences that might impact one party's theory of the case.  The district court acted well within its discretion when it took judicial notice of the facts contained on the government website.[4]

## III.

Because we discern no error, the judgment of the district court is

*AFFIRMED.*

---

[4] Even assuming the district court did err in admitting the portion of the website, it was harmless.  The government presented sufficient evidence as to the nature of an interview that we are assured the judgment was not substantially swayed by any potential error. *Johnson*, 617 F.3d at 292.