**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-4173**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CHRISTIAN GEOVANY GUARDADO-DIAZ, a/k/a Christian Diaz,

Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. George Jarrod Hazel, District Judge. (8:16-cr-00214-GJH-1)

Submitted: May 21, 2018                                Decided: June 5, 2018

Before MOTZ, KING, and WYNN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

James Wyda, Baltimore, Maryland, Joanna Silver, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland; Christopher B. Leach, Monica L. Haymond, GIBSON, DUNN & CRUTCHER LLP, Washington, D.C., for Appellant. Stephen M. Schenning, Acting United States Attorney, Baltimore, Maryland, David I. Salem, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland; Kenneth A. Blanco, Acting Assistant Attorney General, Trevor N. McFadden, Deputy Assistant Attorney General, John M. Pellettieri, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Christian Geovany Guardado-Diaz of unlawful reentry after removal following a felony conviction, in violation of 8 U.S.C. § 1326(a), (b)(1) (2012). The district court sentenced Guardado-Diaz to a sentence of time served, followed by three years' supervised release. On appeal, he raises various challenges to his conviction. Finding no error, we affirm.

Guardado-Diaz first challenges the district court's denial of his 8 U.S.C. § 1326(d) (2012) motion to dismiss the indictment on the basis that Guardado-Diaz failed to show that the entry of his underlying 1997 removal order was fundamentally unfair. *See* 8 U.S.C. § 1326(d)(3). He contends that during his deportation hearing, the immigration judge (IJ) omitted certain key benefits of voluntary departure—a form of discretionary relief—and misstated that in order to qualify for such relief, Guardado-Diaz was required to secure funds in a short period of time to leave the country. Guardado-Diaz claims that, rather than being deported, he would have sought voluntary departure had he been sufficiently informed of the attendant benefits and eligibility requirements.

In considering the district court's ruling on a § 1326(d) motion to dismiss an indictment, "we review the court's legal conclusions de novo and its factual findings for clear error." *United States v. Lopez-Collazo*, 824 F.3d 453, 460 (4th Cir. 2016), *cert. denied*, 137 S. Ct. 628 (2017). In a prosecution for illegal reentry following an order of removal, a defendant may collaterally attack the removal order that constitutes an element of the offense if he can show, in part, that "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d)(3); *see Lopez-Collazo*, 824 F.3d at 458. "To

3

demonstrate fundamental unfairness in the entry of the removal order, a defendant must show that (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *Lopez-Collazo*, 824 F.3d at 460 (internal quotation marks omitted).

Even if we were to assume that the failure to sufficiently inform a defendant of discretionary relief at his deportation hearing constitutes a due process violation, the IJ did not violate this right with his announcement of the short period of time requirement because he correctly stated the law at the time. *See Ramsay v. INS*, 14 F.3d 206, 211 (4th Cir. 1994). And regardless, the district court did not clearly err in finding that Guardado-Diaz failed to show prejudice, as neither Guardado-Diaz's nor his godfather's conclusory affidavits explained why Guardado-Diaz needed additional time to secure funds or how having knowledge of additional benefits of voluntary departure would have changed Guardado-Diaz's decision not to seek it.

Guardado-Diaz next contends that the district court's admission of testimony from Rita Crawley—a United States Citizenship and Immigration Services (USCIS) Records Section Chief—regarding a database search, in the absence at trial of the supervisee who conducted the search, violated his rights under the Confrontation Clause. He claims that the screenshots of the search results did not constitute raw data and that Crawley's testimony relayed the supervisee's implied testimonial assertion that the supervisee entered the correct search terms.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses

4

against him." U.S. Const. amend. VI. "Evidence implicates the Confrontation Clause only if it constitutes a testimonial statement—that is, a statement made with a primary purpose of creating an out-of-court substitute for trial testimony." *United States v. Reed*, 780 F.3d 260, 269 (4th Cir. 2015) (internal quotation marks omitted). The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). Raw data generated by machines is non-testimonial and does not implicate the Confrontation Clause. *United States v. Summers*, 666 F.3d 192, 202 (4th Cir. 2011).

"[W]e review an alleged Confrontation Clause violation de novo. . . ." *Reed*, 780 F.3d at 269. However, "a violation may be found harmless on appeal if the beneficiary of the constitutional error can prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* (internal quotation marks omitted).

To the extent that the admission of database search results through the supervisor of the individual who conducted the search raises Confrontation Clause concerns, any such error in this case was harmless beyond a reasonable doubt. *See Reed*, 780 F.3d at 269. Crawley testified that she personally reviewed Guardado-Diaz's A-file, which did not contain any documents showing that he had applied for or received permission to reenter the United States and that such documents would be in his A-file if he had applied. *See United States v. Blanco-Gallegos*, 188 F.3d 1072, 1075 (9th Cir. 1999). Further, another witness confirmed that important documents, such as those concerning

5

permission to reenter, were always kept in A-files. Thus, Guardado-Diaz fails to show that the district court's admission of the contested testimony constituted reversible error.

Finally, Guardado-Diaz argues that the district court erred in admitting a warrant of deportation ("the warrant") as a record of a regularly conducted activity or a public record, pursuant to Fed. R. Evid. 803(6), (8), because the document was untrustworthy. He claims that the immigration officials who attached a fingerprint to the warrant had little or no memory at trial of doing so, that the document that served as the source of the fingerprint taped onto the warrant was not in his A-file, and that none of the witnesses could verify the fingerprint's source.

"We review a district court's evidentiary rulings for abuse of discretion." *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017). "Erroneous evidentiary rulings are harmless so long as we are assured that they did not substantially sway the judgment." *Id.* Records of a regularly conducted activity and public records are admissible if, amongst other requirements, "the opponent does not show the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E), (8)(B). "The party opposing admission has the burden to establish unreliability," and public records and records of a regularly conducted activity are presumptively admissible "unless there are sufficient negative factors to indicate a lack of trustworthiness." *Zeus Enters., Inc. v. Alphin Aircraft, Inc.*, 190 F.3d 238, 241 (4th Cir. 1999) (internal quotation marks omitted); *see Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 205 (4th Cir. 2000). The motive of a record's creator is highly relevant to the record's

trustworthiness. *See Certain Underwriters*, 232 F.3d at 205; *Ellis v. Int'l Playtex, Inc.*, 745 F.2d 292, 300-01 (4th Cir. 1984).

We conclude that the district court did not abuse its discretion in admitting the warrant. Immigration officials explained the procedures involved in creating the warrant, described their contributions to the document, and confirmed that they relied on safeguards other than fingerprints for confirmation of deportation. An expert matched the fingerprint on the warrant to that of Guardado-Diaz. An Immigration and Customs Enforcement (ICE) agent stated that he was responsible for taping the fingerprint on the warrant, while another ICE agent identified a specific form as the likely source of the fingerprint. The fact that most of the testifying officials did not specifically remember Guardado-Diaz or the warrant does not undermine the warrant's trustworthiness. *See Ellis*, 745 F.2d at 300. Further, Guardado-Diaz failed to identify any motivation on the part of the immigration officials to falsify the warrant.

Accordingly, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*