# United States Court of Appeals
## For the First Circuit

No. 99-2125

UNITED STATES OF AMERICA,

Appellant,

v.

JULIO CÉSAR LUNA-DÍAZ,
a/k/a FEDERICO ANTONIO SOTO-PENA

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before

Torruella, Chief Circuit Judge,

Bownes, Senior Circuit Judge,

and Lipez, Circuit Judge.

Donald C. Lockhart, Assistant United States Attorney, Mary E. Rogers, Assistant United States Attorney, with whom Margaret E. Curran, United States Attorney, were on brief, for appellant.

Steven A. Lagana, with whom Lagana & Associates was on brief, for appellee.

July 27, 2000

**BOWNES, Senior Circuit Judge.**    This appeal by the government challenges a sentence imposed by the United States District Court for the District of Rhode Island (Torres, J.). Defendant-Appellee Julio Cesar Luna-Díaz (hereafter "Luna") was convicted of the offense of reentry after deportation.    At sentencing, the district court refused to apply a 16-level enhancement for reentry by an alien who had previously been deported following conviction of an aggravated felony.  Finding the district court's decision contrary to the language of the guidelines, we reverse and remand for new sentencing.

## I. Offense Facts

Although the law in this case is complex, the facts are simple and undisputed.  The events that occasioned this appeal began in October of 1992, when Luna first entered the United States illegally.  In December of 1993, Luna pled guilty in Massachusetts  state court to four felony drug offenses related to the manufacture and distribution of cocaine (hereafter "the 1993 conviction").  The state court imposed a two-year suspended sentence.  In May of 1995, Luna was deported.  Luna again entered the country illegally in September of 1997, but was almost immediately apprehended and deported.  In December of 1997, Luna again entered the country without permission from the Attorney General.  On March 26, 1998, he was arrested.  Shortly

after his arrest, Luna was indicted, and he pled guilty on September 11, 1998 to a violation of 8 U.S.C. § 1326(a) (1994), which bars deported aliens from returning without the express permission of the Attorney General. The district court sentenced him to eighteen months imprisonment.

## II. Procedural Facts and Relevant Statutes

This case is governed by a somewhat complex web of federal and state statutes. Section 1326(a), the statute under which Luna was indicted, states in pertinent part:

> Subject to subsection (b) of this section, any alien who —
> (1) has been denied admission, excluded, deported, or removed . . . and thereafter
> (2) enters . . . the United States, unless . . . the Attorney General has expressly consented . . .
> shall be fined under Title 18, or imprisoned not more than 2 years, or both.

Section 1326(b) provides that:

> Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection — . . .
> (2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under [Title 18], imprisoned not more than 20 years, or both . . . .

United States Sentencing Guidelines Manual (U.S.S.G.) § 2L1.2 is the relevant guideline provision for violations of § 1326. Section 2L1.2 sets a base offense level of 8. Subsection (b) of

§ 2L1.2 provides for enhancements based on specific offense characteristics.  It states:

> (b) Specific Offense Characteristic
> (1) If the defendant previously was deported after a criminal conviction . . . increase as follows . . . .:
> (A) If the conviction was for an aggravated felony, increase by 16 levels.

U.S.S.G. § 2L1.2(b).

After pleading guilty, Luna obtained a continuance of his sentencing hearing in order to challenge his earlier 1993 conviction in a Massachusetts state court.  Luna then moved in state court to vacate his previous conviction.  As support for this motion, Luna cited Mass. Gen. Laws ch. 278 § 29D (1998).  This law, which applies in all criminal cases in Massachusetts, mandates a warning to defendants pleading guilty, that a guilty plea may have adverse immigration consequences.  Chapter 278, § 29D states:

> The court shall not accept a plea of guilty . . . from any defendant in any criminal proceeding unless the court advises such defendant of the following:  "If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States." The defendant shall not be required at the time of the plea to disclose to the court his legal status in the United States . . . .

> If the court fails so to advise the defendant, and he later at any time shows that his plea and conviction may have one of the enumerated consequences, the court, on the defendant's motion, shall vacate the judgment, and permit the defendant to withdraw the plea of guilty . . . . Absent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement.

In a proceeding before the state court, the judge who had accepted the original plea examined the docket and record from the 1993 conviction. The court noted that the box marked "Advised of Alien Rights" had not been checked.[1] In keeping with § 29D's presumption, the court vacated the plea.

After vacating the 1983 conviction, Luna moved in federal district court to advance his sentencing. At sentencing, Luna claimed that § 2L1.2(b) no longer applied to him, because he had vacated his conviction. The government disagreed, arguing instead that the relevant time for determination of felon status is the time of deportation, not the time of sentencing on the reentry offense. The district court accepted the defendant's view and declined to apply the

---

[1] We note that there are, on the docket sheet, five boxes to check for colloquy warning. They are: "Advised of right to counsel;" "Advised of right to drug exam;" "Advised of right to bail review;" "Advised of right to F.I. Jury Trial;" and "Advised of alien rights." The New Bedford District Court checked only one of these boxes: the one for the right to a jury trial.

16-level enhancement.  The government objected to the resulting sentence of eighteen months, and this appeal ensued.

### III. Standard of Review

We review the legal determination of the guideline's meaning and scope de novo.  See United States v. Talladino, 38 F.3d 1255, 1263 (1st Cir. 1994) ("[Q]uestions of law — including interpretive questions concerning the meaning and scope of the sentencing guidelines — engender de novo review.").

### IV. Guideline Interpretation

We begin, as with other questions of statutory and regulatory interpretation, with the plain language of the disputed guideline.  See United States v. McMinn, 103 F.3d 216, 221 (1st Cir. 1997) ("Our construction is guided by conventional interpretive principles."); see also United States v. Butler, 207 F.3d 839, 847 (6th Cir. 2000) ("It was proper for the district court to take a plain language approach in its interpretation of § 3B1.4, because courts must treat the sentencing guidelines as if they were a statute, and follow the clear, unambiguous language if there is no manifestation of a contrary intent.") (opinion of Clay, J.) (internal quotation marks omitted); United States v. Lewis, 93 F.3d 1075, 1080 (2d

-7-

Cir. 1996) ("Interpretation of the Guidelines is similar to statutory construction.").[2]

The guideline at issue in this case states:  "If the defendant previously was deported after a . . . conviction . . . for an aggravated felony  increase 16 levels."  The guideline's plain language militates in favor of the government's position.  The language suggests that the relevant time is the time of deportation: "deported after a . . . conviction," and not the time of sentencing.  The guideline speaks of time, not possession or status.  In other words, the guideline (and statute) might have dealt with aliens who have a previous aggravated felony conviction or are convicted felons, and then are convicted of reentry.  The guideline, however, is in the past tense, which suggests that the present status of the

---

[2] There is one crucial difference between interpreting criminal statutes and all other statutes.  In interpreting a criminal statute, including the guidelines, the rule of lenity applies.   See United States v. Werlinger, 894 F.2d 1015, 1017-18 (8th Cir. 1990) (invoking rule of lenity to find that Guidelines shall not be readily construed to multiply punishment for conduct already punished through the application of another guideline).  The rule of lenity requires that ambiguities in the scope of a criminal statute must be resolved in favor of the criminal defendant.  See United States v. Lanier, 520 U.S. 259, 266 (1997); see also United States v. Bowen, 127 F.3d 9, 13 (1st Cir. 1997) (invoking the rule of lenity to resolve Sentencing Guidelines' ambiguity in favor of criminal defendant).  The rule comes into operation, though, only when the language of the statute is ambiguous.  See United States v. Campbell, 167 F.3d 94, 98 (2d Cir. 1999).

aggravated felony conviction is irrelevant.  It is impossible to alter the historical fact that the defendant was convicted, and then deported.

The same is true of the statute itself, which speaks of an alien "whose removal was subsequent to a conviction for commission of an aggravated felony."  8 U.S.C. § 1326(b).  By all indications, the relevant time under the statute is the moment of removal, not of sentencing.

This conclusion is in accord with that of the Tenth Circuit in the only reported decision to address this problem.[3] In  United States v. Cisneros-Cabrera, 110 F.3d 746 (10th Cir. 1997), the court ruled that subsequent vacatur of the previous aggravated felony was irrelevant to the application of § 2L1.2(b).  The court did so exclusively by resort to the plain language of § 2L1.2(b) and § 1326(b).  It stated:

---

[3] In our decision in United States v. Smith, 36 F.3d 128 (1st Cir. 1994), we considered a facially similar claim.  The defendant in that case alleged that his indictment under § 1326, which referred specifically to § 1326(b)(2), should have been dismissed because he succeeded in vacating his prior state conviction.  We rejected that contention, based on our view that § 1326(b) does not establish a separate offense, but instead provides a sentencing enhancement.  That view has since been affirmed by the Supreme Court.  See Almendarez-Torres v. United States, 523 U.S. 224 (1998).  Despite the factual similarity, Smith bears no resemblance to the instant case as a legal matter; it dealt with dismissal of the indictment based on a ground since rejected by the Supreme Court, and not with sentencing on an issue not yet considered by the Supreme Court.

> Given the clarity of 8 U.S.C. § 1326(b)(2) and U.S.S.G. § 2L1.2(b)(2), the district court's consideration of [defendant's] vacated state conviction to enhance his sentence was appropriate. [Defendant] does not deny he was deported after a conviction for an aggravated felony, and under § 2L1.2(b)(2), no more is required. Thus, while true most other sentence enhancement provisions consider only those convictions valid at the time of sentencing, in this case, the relevant time frame for determining whether the sentence enhancement should apply is specifically provided by statute.

Cisneros-Cabrera, 110 F.3d at 748.

Review of other statutes that depend on prior convictions supports our conclusion with respect to the language of the statute. The guidelines concerning calculation of a defendant's criminal history score contain an explicit exception for convictions subsequently vacated. Application Note 6 to U.S.S.G. § 4A1.2 states: "Sentences resulting from convictions that (A) have been reversed or vacated because of errors of law or because of subsequently discovered evidence exonerating the defendant, or (B) have been ruled constitutionally invalid . . . are not to be counted." Other guidelines that provide sentence enhancements based on prior convictions explicitly incorporate by reference the above limitations. For example, Application Note 5 to U.S.S.G. § 2K2.1, dictates that, when considering enhancement under the guideline for possession of a

firearm, "'prior felony conviction(s),' are defined in § 4B1.2."

More importantly, the Armed Career Criminal Act, 18 U.S.C. § 924 (1994) (ACCA), bars the use of "[a]ny conviction which has been expunged, or set aside . . . .," <u>see</u> § 921(a)(20) (providing definitions for § 924), as does the guideline that pertains to the Act. <u>See</u> U.S.S.G. § 4B1.2, Application Note 3 (cross-referencing definition of convictions set out in § 4A1.2).

The absence of an explicit exception for vacated convictions in § 2L1.2(b) and the statute compels a result here that is different from the result that would obtain under the ACCA or § 4A1.2. Congress (in the ACCA) and the Sentencing Commission (in § 4A1.2) have both manifested an ability to state unambiguously when vacated convictions are to be disregarded for purposes of punishment. Because the guidelines elsewhere make such an exception explicit, we are unable to read one implicitly into § 2L1.2(b).

Our interpretation of the statute is in accord with the interpretive method used by the Supreme Court in the analogous <u>Custis</u> v. <u>United States</u>, 511 U.S. 485(1994). In that case the Supreme Court considered whether the ACCA "should be read to permit defendants to challenge the constitutionality of

convictions used for sentencing purposes." Id. at 490. The Court answered this question in the negative, noting that related statutes explicitly permitted such challenges, but the ACCA did not. The Court found this omission deliberate and dispositive, stating: "The language of [the Drug Act] shows that when Congress intended to authorize collateral attacks on prior convictions . . . it knew how to do so. Congress' omission of similar language in [the ACCA] indicates that it did not intend to give defendants the right to challenge the validity of prior convictions under this statute." Id. at 492. Cf. Gozlon-Peretz v. United States, 498 U.S. 395, 404 (1991) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quoted in Custis, 511 U.S. at 492).

The First Circuit faced an similar interpretive question in United States v. Josleyn, 99 F.3d 1182, 1198-99 (1st Cir. 1996). In that case, the defendant argued that a guideline enhancement for "abuse of a position of trust" should not apply to commercial bribery cases. As support for his position, he noted that because the guidelines mandated that the enhancement

-12-

could not apply to public bribery cases, they should not apply to private bribery. We rejected this position, stating:

> The absence of an explicit provision restricting the application of the abuse-of-trust enhancement in commercial bribery cases severely undercuts the analogy urged by [the defendant]. See United States v. Newman, 982 F.2d 665, 673-74 (1st Cir. 1992) (applying expressio unius est exclusio alterius principle in this sentencing context). Furthermore, the Sentencing Commission took pains throughout the Guidelines to specify the circumstances in which courts should not impose enhancements for abuse of trust.

Josleyn, 99 F.3d at 1198-99. For similar reasons, we refuse to adopt Luna's view of the instant guideline.

In addition, the commentary to § 2L1.2(b) implies that Luna's now-vacated conviction should still be considered. Application Note 4 states: "An adjustment under subsection (b) for a prior felony conviction applies in addition to any criminal history points added for such conviction in Chapter Four, Part A . . . ." Application Note 4 makes clear that under § 2L1.2(b), prior convictions are distinct from convictions considered under § 4A1.2. Convictions that the court may consider pursuant to § 4A1.2 are limited to those that have not been vacated; those that the court may consider under § 2L1.2(b) carry no such limitation, and are to be considered "in addition."

Diaz argues that the instant case is controlled by our decision in United States v. Cuevas, 75 F.3d 778 (1st Cir. 1996). In Cuevas we considered the question of whether a plea of nolo contendere constituted a conviction for purposes of § 2L1.2. According to a state statute, such pleas could not be introduced in any later proceeding, provided that the defendant had successfully completed probation on the nolo plea. See id. at 780 & n.5. We held that "conviction" under § 2L1.2 was a matter of federal law, and that the state law did not control. See id. at 781.

Contrary to Luna's assertions on appeal, we did not hold that § 4A1.1-2 provides the definition for the term "conviction" in the reentry guideline. We did not go that far. See Cuevas, 75 F.3d at 780-81. We described the criminal history guideline as "provid[ing] . . . guidance," id. at 782, and "instructive, if not dispositive," id. at 782 n.10. Even if we were to agree, which we do not, that Cuevas turned on application of § 4A1.1-2 to § 2L1.2, that still would not bind us in the instant case. Cuevas defined "conviction" but did not deal with the exclusions from the definition that are at issue in the instant case.[4]

_____

[4] We are aware of the decision of the Second Circuit in United States v. Campbell, 167 F.3d 94 (2d Cir. 1999). In that case, the Second Circuit held that convictions that had been

-14-

## V. Conclusion

For the reasons stated, we find that the district court abused its discretion in refusing to impose the enhancement. Accordingly, we vacate the sentence imposed by the district court and remand for resentencing.[5]

---

vacated could still form the basis for the § 2L1.2 enhancement where the reason for the vacatur (or reversal) was "for reasons unrelated to innocence or errors of law." Id. at 98. In doing so, the court, like the Cuevas court, relied on § 4A1.2 as instructive, although not controlling, for purposes of § 2L1.2. Were we to adopt the view of the Second Circuit, our result might be the same; the vacatur in Diaz's case is arguably technical. We do not reach the issue, however, because of our holding above that the plain language of the guideline requires use of Luna's prior conviction.

[5] One caveat is appropriate. The instant case does not require us to decide whether allowing § 2L1.2(b)'s enhancement to rest on a prior conviction vacated as a result of a constitutional infirmity, egregious error of law, or determination of innocence, might in some limited circumstances raise constitutional due process concerns.