**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-4610**

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

JUAN ANTONIO MORENO-TAPIA, a/k/a Julian Castellanos,

                    Defendant - Appellant.

Appeal from the United States District Court for the Middle
District of North Carolina, at Greensboro.  Catherine C. Eagles,
District Judge.  (1:14-cr-00241-CCE-1)

Argued:  October 28, 2016          Decided:  January 26, 2017

Before TRAXLER, DIAZ, and HARRIS, Circuit Judges.

Affirmed by published opinion.  Judge Harris wrote the opinion,
in which Judge Traxler and Judge Diaz joined.

**ARGUED**: John Arthur Duberstein, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Greensboro, North Carolina, for Appellant.  Anand P.
Ramaswamy, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro,
North Carolina, for Appellee.  **ON BRIEF**: Louis C. Allen, Federal
Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER,
Greensboro, North Carolina, for Appellant.  Ripley Rand, United
States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,
Greensboro, North Carolina, for Appellee.

PAMELA HARRIS, Circuit Judge:

In 2007, appellant Juan Antonio Moreno-Tapia, a native of Mexico, pleaded guilty in North Carolina court to three counts of indecent liberties with a child. According to Moreno-Tapia, neither his counsel nor the court informed him of the potential immigration consequences of his guilty plea. But those consequences turned out to be significant, and in 2009, Moreno-Tapia was removed from the United States on the basis of his state convictions.

After Moreno-Tapia reentered the country without permission, he was charged in federal court in 2014 with illegal reentry by a removed alien, see 8 U.S.C. § 1326(a), (b)(2), as well as failure to register as a sex offender under SORNA, the Sex Offender Registration and Notification Act, see 18 U.S.C. § 2250. Moreno-Tapia argued, however, that his underlying convictions were unconstitutional in light of the Supreme Court's intervening decision in Padilla v. Kentucky, 559 U.S. 356, 374 (2010), holding that the Sixth Amendment requires a defense attorney to advise a non-citizen client of the immigration risks of a guilty plea. And, indeed, in 2015, a North Carolina court vacated Moreno-Tapia's convictions, relying on Padilla.

The primary question before us now is what effect the alleged constitutional deficiency in Moreno-Tapia's state

2

convictions has on his subsequent prosecution for illegal reentry. We conclude that the alleged infirmity has no effect. Because Padilla does not apply retroactively to defendants like Moreno-Tapia, convicted before the case was decided, see Chaidez v. United States, 133 S. Ct. 1103, 1105 (2013), Moreno-Tapia's convictions remain valid today as a matter of federal law, and his attempt to collaterally attack his 2009 removal is unavailing on that ground alone.

Accordingly, we hold that the district court properly denied Moreno-Tapia's motion to vacate the 2009 removal order and to withdraw his guilty plea to the charge of illegal reentry. And for similar reasons, we find no error in the district court's reliance on the vacated state convictions in determining Moreno-Tapia's sentencing range under the Sentencing Guidelines. We therefore affirm the judgment of the district court in all respects.

**I.**

**A.**

We begin with a brief overview of the statutory background relevant to the illegal reentry charge against Moreno-Tapia. Under 8 U.S.C. § 1326(a) and b(2), an alien who has been removed from the United States after being convicted of an aggravated felony – as Moreno-Tapia was in 2009, based on his state

3

convictions – commits a felony if he subsequently reenters the United States without permission. To win a conviction under § 1326, the government must prove, as an element of the offense, the defendant's prior removal or deportation. See United States v. El Shami, 434 F.3d 659, 663 (4th Cir. 2005).[1]

Typically, the government may rely on the removal order itself, issued by the Department of Homeland Security ("DHS"), to meet this burden. But in United States v. Mendoza-Lopez, 481 U.S. 828 (1987), the Supreme Court held that the fact of a removal order may not be treated as conclusive proof of an element of a criminal offense where the immigration proceeding "was not conducted in conformity with due process." Id. at 834, 838-39. In that case, the Court concluded, the underlying immigration proceeding violated due process, because the immigration judge permitted improper waivers of the right to appeal and failed to advise of eligibility to apply for suspension of deportation. Id. at 840. And because those

---

[1] The terms "deportation" and "removal" are interchangeable for purposes of § 1326. United States v. Gomez, 757 F.3d 885, 891 n.1 (9th Cir. 2014). While § 1326(a) refers, inter alia, to an alien who has been "deported" or "excluded," the subsequently enacted Illegal Immigration Reform and Immigrant Responsibility Act of 1996 combined those once distinct proceedings into a single category of "removal proceedings." Jama v. Immigration & Customs Enforcement, 543 U.S. 335, 349–50 (2005); Gomez, 757 F.3d at 891 n.1. Cases post-dating this amendment generally use the term "removal proceedings," although § 1326 continues to refer to "deportation proceedings." See 8 U.S.C. § 1326(d)(2).

4

procedural defects foreclosed judicial review of the resulting deportation order, the Court held, the defendants were entitled to collaterally attack that order in their subsequent prosecution for illegal reentry. Id. at 837-39.

Congress responded by codifying the principle of Mendoza-Lopez in 8 U.S.C. § 1326(d). See United States v. Sosa, 387 F.3d 131, 136 (2d Cir. 2004). Under that statute, in order to bring a successful collateral attack against a removal order, the defendant in an illegal reentry prosecution must meet three requirements, demonstrating that:

> (1) [he or she] exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d); see United States v. Lopez-Collazo, 824 F.3d 453, 458 (4th Cir. 2016). Like Mendoza-Lopez, these three factors – exhaustion of administrative remedies, the denial of judicial review, and fundamental unfairness – are concerned with procedural irregularities in immigration proceedings that may insulate the resulting orders from judicial review, making it fundamentally unfair to rely on those orders in later criminal prosecutions. Sosa, 387 F.3d at 136.

5

**B.**

Moreno-Tapia immigrated to the United States from Mexico with his family as a child. His parents became legal permanent residents, as did his five siblings. Moreno-Tapia applied for legal permanent residency, but the process never advanced due to his eventual removal from the United States.

There are two underlying proceedings relevant to this case: a state prosecution for indecent liberties with a child, and a subsequent immigration proceeding that led to Moreno-Tapia's deportation. First, in 2006, Moreno-Tapia was charged in North Carolina court with three counts of felony indecent liberties with a child, see N.C. Gen. Stat. Ann. § 14-202.1, arising from Moreno-Tapia's consensual relationship with a fifteen-year old girl when he was twenty-one. Moreno-Tapia pleaded guilty and was sentenced to 15 to 18 months' imprisonment. At the plea hearing, the court instructed Moreno-Tapia that he would be required to register as a sex offender after his release from prison. But Moreno-Tapia alleges that he was not informed of the immigration consequences of his guilty plea by his attorney or by the court. Although his plea document noted that deportation was a possible consequence, Moreno-Tapia did not sign the plea document and claims he never saw a copy of it.

Second, while Moreno-Tapia was serving his state sentence, DHS initiated removal proceedings, on the ground that his

6

indecent liberties convictions qualified as aggravated felonies subjecting him to deportation. See 8 U.S.C. § 1227(a)(2)(A)(iii). Because Moreno-Tapia was never lawfully admitted to the United States for permanent residence, he was subject to an expedited removal process. See 8 U.S.C. § 1228(b); Etienne v. Lynch, 813 F.3d 135, 138-40 (4th Cir. 2015) (describing expedited removal process). Instead of being afforded a hearing before an immigration judge, Moreno-Tapia was served with a Notice of Intent to Issue a Final Administrative Removal Order ("NOI"), indicating that DHS would enter a final removal order and that Moreno-Tapia had ten days to rebut the charge in writing. See 8 C.F.R. § 238.1(b)(2)(i); Etienne, 813 F.3d at 138-39. Moreno-Tapia did not contest the charge and instead requested that he be removed to Mexico. In March of 2009, soon after service of a final removal order and Moreno-Tapia's release from state prison, DHS deported Moreno-Tapia.

## C.

At some point prior to 2011, Moreno-Tapia reentered the United States without permission and returned to North Carolina. He did not register as a sex offender under SORNA, despite his convictions for a qualifying sex offense. A subsequent arrest revealed him to the authorities and led to the current federal proceeding.

7

In June 2014, Moreno-Tapia was indicted in the Middle District of North Carolina on two charges: illegal reentry by a removed alien, under 8 U.S.C. § 1326(a) and (b)(2); and failure to register as a sex offender, under 18 U.S.C. § 2250. The parties entered into a written plea agreement, under which Moreno-Tapia pleaded guilty to the illegal reentry charge, and the government agreed to dismissal of the charge for failure to register.

After his guilty plea, Moreno-Tapia in February 2015 returned to North Carolina court and filed a Motion for Appropriate Relief ("MAR") seeking to vacate his state indecent liberties convictions. Relying on the Supreme Court's 2010 decision in Padilla v. Kentucky, 559 U.S. 356 (2010) – issued three years after his convictions – Moreno-Tapia argued that his convictions should be set aside because his lawyer's failure to inform him of the immigration consequences of his guilty plea meant that his plea was not knowing and voluntary. The North Carolina court agreed, and vacated Moreno-Tapia's convictions on the ground that they "were the result of a plea that was not sufficiently knowing and voluntary under Padilla[.]" J.A. 237. Neither Moreno-Tapia nor the North Carolina court addressed the Supreme Court's 2013 decision holding that Padilla does not apply retroactively to defendants like Moreno-Tapia, whose

8

convictions became final before that decision was issued. See Chaidez, 133 S. Ct. at 1113.

With the state MAR ruling vacating his convictions in hand, Moreno-Tapia returned to federal district court. According to Moreno-Tapia, his removal order – a predicate for the charge of illegal reentry – was subject to collateral attack under 8 U.S.C. § 1326(d) on the ground that it rested on unconstitutional and since-vacated convictions. Moreno-Tapia thus moved to vacate the 2009 removal order and, if successful, to withdraw his guilty plea to the charge of illegal reentry. That would leave in place the charge for failure to register as a sex offender – but that charge, too, Moreno-Tapia argued, could not go forward in light of the vacatur of his underlying convictions. Accordingly, Moreno-Tapia also moved the district court to dismiss both counts of the indictment against him.

At a hearing in July 2015, the district court denied all of Moreno-Tapia's motions. As to the illegal reentry charge, the district court explained, the vacatur of Moreno-Tapia's state convictions was not dispositive; to make a case of illegal reentry under § 1326, the government need not prove the underlying convictions from 2007, but only that Moreno-Tapia in fact had been removed in 2009. See J.A. 171 ("[T]he new prosecution for illegal reentry is not based on the old vacated conviction, it is based on the deportation; and the deportation

9

was based on a facially valid conviction at the time of the deportation[.]").

Nor, the district court held, could Moreno-Tapia mount a collateral attack on the 2009 removal order based on the purported constitutional deficiency of his 2007 convictions. The district court reviewed the three-part standard of § 1326 – exhaustion of administrative remedies, preclusion of judicial review, and fundamental unfairness – and held that Moreno-Tapia, who had consented to his deportation and never sought "any sort of review of any part of the deportation proceedings," could not meet the first two requirements. J.A. 167. The court rejected Moreno-Tapia's argument that his failure to seek administrative or judicial review should be excused because he was then unaware of a potential constitutional infirmity in his state convictions. Though there are cases excusing a failure to exhaust when it is caused by a procedural irregularity in a deportation proceeding itself, the court explained, those cases "concern rights one has with the immigration proceeding," not with respect to an underlying conviction. J.A. 170. And here, Moreno-Tapia had identified no procedural problems with his immigration proceeding at all:

> Mr. Moreno-Tapia does not contend he was affirmatively misadvised by anyone involved in the deportation proceedings concerning his right to contest the deportation or to appeal the decision . . . . He has not identified anything that immigration authorities

10

> should have done during the course of the deportation proceedings that they did not do, and the Court thus finds that he's not met the first two requirements of the statute as those requirements would ordinarily be interpreted.

J.A. 167.

Relying on Moreno-Tapia's failure to satisfy the first two requirements of § 1326, the district court had no need to make a final determination as to the third factor, fundamental unfairness. But the court did note that Moreno-Tapia was not asserting actual innocence of the indecent liberties charges, and that Padilla, on which the state MAR court relied, does not apply retroactively. Ultimately, the court concluded that § 1326 and Mendoza-Lopez could provide no relief because Moreno-Tapia's complaint was not with his immigration proceedings but rather with his underlying state convictions, independently subject to judicial review through the state-court MAR process. The court therefore denied Moreno-Tapia's motions to vacate the 2009 removal order and to withdraw his guilty plea to the illegal reentry charge.

The district court recognized that Moreno-Tapia's motion to dismiss the indictment against him was "dependent" on the success of his motions to vacate his removal order and withdraw his plea. J.A. 156. If the removal order and plea agreement remained in effect, that is, then Moreno-Tapia would stand convicted of illegal reentry, and the charge of failure to

11

register as a sex offender would be dismissed pursuant to the plea agreement. Id. ("If I deny the motion to vacate the deportation order . . . the motion to withdraw the guilty plea . . . doesn't need to be heard . . . and it sort of does away with the motion to dismiss the indictment as well[.]"). Nevertheless, the court went on to deny the motion to dismiss both counts of the indictment "[t]o the extent [it] is still before the [c]ourt." J.A. 176.

In September 2015, the district court held a sentencing hearing on the illegal reentry charge. Consistent with the Presentence Report ("PSR"), and over Moreno-Tapia's objection, the district court used the vacated indecent liberties convictions as the basis for a twelve-level enhancement to Moreno-Tapia's offense level under § 2L1.2 of the Sentencing Guidelines, on the ground that Moreno-Tapia "previously was deported" after a conviction for a "crime of violence." U.S. Sentencing Guidelines Manual § 2L1.2(b)(1) (U.S. Sentencing Comm'n 2014) (amended 2016). After a minor downward departure, the district court was left with a Guidelines range of 24 to 30 months, and sentenced Moreno-Tapia to 27 months' imprisonment.

This timely appeal followed.

12

We begin with the core issue in this case: Moreno-Tapia's motion to vacate his removal order, without which, he argues, he may not be convicted of illegal reentry. This court reviews de novo a collateral attack on a removal order under 8 U.S.C. § 1326(d). El Shami, 434 F.3d at 663.

As described above, § 1326(d), like the Mendoza-Lopez decision it codifies, is concerned with failures of due process in an immigration proceeding that would make it fundamentally unfair to rely on a removal order coming out of that proceeding. In particular, where a procedural defect in an immigration proceeding insulates the resulting order from judicial review, due process requires that the order be subject to collateral attack if it is relied on in a subsequent criminal prosecution. See Mendoza-Lopez, 481 U.S. at 840 (holding that immigration proceeding violated due process because immigration judge permitted waivers of right to appeal that were not knowing); § 1326(d)(1), (2) (requiring, as condition of collateral attack, that defendant have exhausted administrative remedies and been deprived of judicial review). That principle is broad enough, courts have held, that a failure to exhaust administrative remedies or seek judicial review as required by § 1326(d) will be excused, and a collateral attack permitted, where that

13

failure is itself the product of a procedural flaw in the immigration proceeding. See, e.g., Sosa, 387 F.3d at 137 (excusing administrative exhaustion requirement of § 1326(d)(1) where immigration judge fails to inform of right to apply for administrative relief); United States v. Muro-Inclan, 249 F.3d 1180, 1183 (9th Cir. 2001) (finding waiver of right to appeal removal order does not preclude collateral attack under § 1326(d) where immigration judge failed to advise of right to seek relief from deportation); see also Lopez-Collazo, 824 F.3d at 459 (accepting government concession that § 1326(d) exhaustion requirements are excused by failure to provide translator where language barrier prevents informed decision to waive appeal rights).

But this case, as the district court recognized, is quite different. The thrust of Moreno-Tapia's argument is not that his immigration proceedings were procedurally defective; it is that his underlying state criminal proceedings were rendered constitutionally infirm by his counsel's failure to inform him of the potential immigration consequences of his guilty plea. At bottom, Moreno-Tapia asks us to find that his immigration proceedings were fundamentally unfair and violated due process not because of any intrinsic procedural irregularity, but because they were predicated on unconstitutional state convictions.

14

As the district court observed, there is an obvious mismatch between the kind of claim Moreno-Tapia seeks to advance and the concerns of Mendoza-Lopez and requirements of § 1326(d). Perhaps most important, whereas Mendoza-Lopez and § 1326(d)(2) focus on the preclusion of judicial review of an immigration order as justification for subsequent collateral attack, here Moreno-Tapia had access to a well-established route to judicial review of his underlying state conviction, by way of the state MAR statute. See J.A. 173 ("Mendoza-Lopez doesn't help . . . because in that case there were no avenues for judicial review of the decision at issue. Here, the state court MAR statute provides a well-established mechanism for judicial review of an allegedly unconstitutional [conviction.]"). And while immigration officials must satisfy certain due process obligations with respect to their own proceedings, see, e.g., Mendoza-Lopez, 481 U.S. at 840; Lopez-Collazo, 824 F.3d at 461, there is no authority imposing on them the duty to advise aliens of potential legal infirmities in prior criminal proceedings. See J.A. 170 (due process does not require "that immigration officials evaluate and advise someone facing deportation based on a deportable criminal conviction of all the possible reasons the conviction might be invalid").

We need not decide today, however, whether these hurdles might be overcome, or whether due process might in some

15

circumstances demand that an immigration order based on an unconstitutional conviction be subject to collateral attack. That is because in this case, Moreno-Tapia's argument is flawed in its premise – that his state convictions in fact were constitutionally infirm. Moreno-Tapia pleaded guilty in 2007, three years before the Supreme Court's decision in Padilla. Because the Supreme Court subsequently decided that Padilla does not apply retroactively, see Chaidez, 133 S. Ct. at 1113, any failure by Moreno-Tapia's lawyer to warn him of the possible immigration consequences of his guilty plea would not render Moreno-Tapia's convictions constitutionally unsound. In other words, Moreno-Tapia's underlying convictions were not obtained unconstitutionally, and as a result, he cannot prevail even if we were to assume that an immigration order resting on an unconstitutional conviction would be open to collateral attack on that ground alone.

That the state MAR court vacated Moreno-Tapia's convictions under Padilla does not change our analysis. The government suggests that the MAR court's holding actually may rest on a state-law rule requiring defendants such as Moreno-Tapia to be made aware of deportation consequences arising from guilty pleas. But whatever the explanation, the state court applied Padilla retroactively to convictions that were final before Padilla was decided. And despite Moreno-Tapia's efforts to re-

16

characterize the state court decision as turning on something other than Padilla, it is clear that the MAR court's brief order, citing Padilla and no other case, is in fact an application of Padilla, see J.A. 237 (defendant's plea was "not sufficiently knowing and voluntary under Padilla v. Kentucky") – which is not surprising, given that Moreno-Tapia's argument to that court also rested entirely on Padilla. It is true, as Moreno-Tapia argues, that the state court order is not before us for review. But Moreno-Tapia has put before us, and squarely so, the question of whether his underlying state convictions were the result of a constitutional violation. And whatever the merits of the MAR court decision under state law, under Chaidez, there was no federal constitutional violation on which Moreno-Tapia can base a collateral attack here.

Under § 1326(d), this crucial shortcoming in Moreno-Tapia's case shows up most plainly in application of the third requirement for a collateral challenge – that entry of the removal order in question be "fundamentally unfair." To demonstrate "fundamental unfairness" under § 1326(d), a defendant must show both that his "due process rights were violated by defects in his underlying deportation proceeding" and also that he "suffered prejudice" as a result. Lopez-Collazo, 824 F.3d at 460 (quoting El Shami, 434 F.3d at 664). We have explained already the gap between Moreno-Tapia's

17

challenge to his state criminal proceedings and the requirement that he identify a procedural "defect[] in his underlying deportation proceeding," id. (emphasis added). But even assuming Moreno-Tapia could satisfy the first prong of the "fundamental unfairness" standard, the failure of his Padilla claim means that he cannot satisfy the prejudice prong.[2]

In Lopez-Collazo, we held that to meet § 1326(d)'s "actual prejudice" requirement, a defendant must show that but for the procedural errors at issue, there was a "reasonable probability that he would not have been deported." Id. at 462 (quoting El Shami, 434 F.3d at 665). And, critically, in evaluating whether a defendant likely would have been deported notwithstanding any procedural defect, we consider the law as it stood at the time of the immigration proceedings. Id. at 462-63, 466 (because law at time of removal classified offense as aggravated felony, entry of removal order does not prejudice defendant and subsequent change in classification of offense does not permit

---

[2] For the first time on appeal, Moreno-Tapia does raise certain alleged procedural deficiencies in his expedited immigration proceedings, arguing that he was removed after eight days rather than the fourteen days specified in 8 U.S.C. § 1228(b)(3), and that the notice DHS provided him did not include a citation for the statutory definition of an aggravated felony. Ordinarily, of course, we do not reach issues that were not presented first to the district court. Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 242 (4th Cir. 2009). And in any event, for the reasons discussed below, Moreno-Tapia cannot demonstrate that he was prejudiced by any purported defect he now identifies.

18

collateral attack); see also United States v. Gomez, 757 F.3d 885, 898-99 (9th Cir. 2014) (courts "look to the law at the time of the deportation proceedings" in assessing prejudice under § 1326(d)).

Here, Moreno-Tapia was removed from the United States in 2009, a year before Padilla was decided. The law at the time of his removal, in other words, gave Moreno-Tapia no right to be informed by his counsel of the potential immigration consequences of his guilty plea. Under the reasoning of Lopez-Collazo, it likely follows that any failure of due process connected to Moreno-Tapia's immigration proceedings could not have caused him "actual prejudice," as he would have remained subject to removal based on his then-valid prior convictions. See 824 F.3d at 466. But this case is more straightforward still, because as a result of Chaidez's holding that Padilla does not apply retroactively, Moreno-Tapia's state convictions not only were constitutional when Moreno-Tapia was removed, but remain constitutional today.[3] There is no process, in other words, that could have led to a finding that Moreno-Tapia's underlying state convictions were anything but constitutionally

---

[3] We therefore need not consider whether the principle articulated in Lopez-Collazo – that courts refer to the law as it stood at the time of removal in assessing prejudice under § 1326(d) – would extend to new substantive rules applied retroactively by the Supreme Court. See Welch v. United States, 136 S. Ct. 1257, 1264-65 (2016).

valid, and as a result, Moreno-Tapia's "case for 'fundamental unfairness' collapses[.]" See id. at 465.

Accordingly, we need not consider whether Moreno-Tapia could satisfy the first two requirements of § 1326(d) – administrative exhaustion and deprivation of judicial review – or whether his failure to do so could be excused on some ground. Because the state convictions on which his removal order is based were at the time of removal and are today constitutionally valid, Moreno-Tapia cannot show the requisite "fundamental unfairness" under § 1326(d), and his collateral challenge fails for that reason alone. And by the same token, due process is not offended when, as the district court put it, "someone who has been lawfully deported based on a [constitutionally valid] felony conviction and who has been advised that it would be illegal to come back into the country is prosecuted for exactly that action." J.A. 176. We therefore affirm the district court's denial of Moreno-Tapia's motions to vacate the order of removal and withdraw his guilty plea to illegal reentry.[4]

_____

[4] We also find that to the extent Moreno-Tapia's motion to dismiss the indictment was still before the district court, see supra at 11-12, it was properly denied. As discussed above, the government was entitled to charge Moreno-Tapia with illegal reentry notwithstanding the vacatur of his state court convictions. And once the district court held that Moreno-Tapia's plea agreement remained enforceable, there no longer was any ground for a challenge to the charge of failure to register as a sex offender under SORNA: Pursuant to the plea agreement, (Continued)

20

Moreno-Tapia also challenges his sentence for illegal reentry, arguing that the district court improperly took account of his vacated state convictions in calculating his Sentencing Guidelines range. We review the district court's legal interpretation of a Guidelines provision de novo, see United States v. Allen, 446 F.3d 522, 527 (4th Cir. 2006), and finding no error, we affirm.

Violations of § 1326's illegal-reentry provision are governed by § 2L1.2 of the Sentencing Guidelines, which provides for enhancements based on specific offense characteristics. As relevant here, § 2L1.2 imposes a 12-level enhancement to the offense level of a defendant who "previously was deported . . . after[] a conviction" for a "crime of violence." U.S.S.G. § 2L1.2(b)(1) (2014).[5] Moreno-Tapia does not dispute that the offense of which he was convicted – indecent liberties with a

that count of the indictment was dismissed at sentencing on the government's motion. We thus have no occasion to consider the merits of Moreno-Tapia's conditional challenge to his indictment for failure to register.

[5] The offense-level increase rises to 16 if a prior conviction for a crime of violence receives criminal history points under a different Guidelines provision. See U.S.S.G. § 2L1.2(b)(1)(A). The parties agree that Moreno-Tapia's now-vacated state convictions do not receive criminal history points, and the district court did not apply the alternative 16-level enhancement.

child – qualifies as a "crime of violence" under § 2L1.2. Instead, he argues that because his convictions were vacated after his removal and illegal reentry, they should not have been taken into account at sentencing under § 2L1.2. We disagree.

Although we have addressed the question only in an unpublished decision, see United States v. Moran-Rosario, 466 F. App'x 257 (4th Cir. 2012), other circuits have reached the same conclusion, holding that the relevant time for determining whether a prior conviction qualifies for enhancement under § 2L1.2 is the date of the defendant's deportation and not the date of a subsequent illegal reentry charge or sentencing. See id. at 258 (citing cases). In other words, if a qualifying conviction was on the books when the defendant was deported, then it serves to enhance a sentence for illegal reentry under § 2L1.2 even if it is subsequently vacated, see, e.g., United States v. Orduno-Mireles, 405 F.3d 960, 961 n.1 (11th Cir. 2005); United States v. Garcia-Lopez, 375 F.3d 586, 588 (7th Cir. 2004); United States v. Luna-Diaz, 222 F.3d 1, 4 (1st Cir. 2000), or otherwise set aside, see, e.g., United States v. Campbell, 167 F.3d 94, 98 (2d Cir. 1999) (conviction set aside when probation term completed).

This follows, the courts have reasoned, from two features of § 2L1.2. First, the provision is written in the past tense, focusing on the time of deportation: The enhancement applies if

22

a defendant who illegally reenters "previously was deported . . . after[] a conviction," U.S.S.G. § 2L1.2(b)(1), demonstrating that "the present status of the [] conviction is irrelevant. It is impossible to alter the historical fact that the defendant was convicted, and then deported." Luna-Diaz, 222 F.3d at 4. And second, when sentencing provisions are intended to exclude subsequently vacated convictions from their scope, they generally say so expressly – like other Guidelines provisions, see, e.g., U.S.S.G. § 4A1.2, cmt. n.6 (in calculating criminal history, "[s]entences resulting from convictions that . . . have been ruled constitutionally invalid . . . are not to be counted"), and the Armed Career Criminal Act, see 18 U.S.C. § 921(a)(20) (barring generally the use of "[a]ny conviction which has been expunged, or set aside"). That § 2L1.2 has no similar express exception for vacated convictions "compels" a different result. Luna-Diaz, 222 F.3d at 5; see Garcia-Lopez, 375 F.3d at 588-89.

We agree with this persuasive line of authority. And indeed, Moreno-Tapia himself does not really take issue with this straightforward reading of § 2L1.2. Instead, he argues that there should be an exception to the general rule that § 2L1.2 reaches convictions valid at the time of deportation for convictions that subsequently are vacated on constitutional grounds. For support, he points to Luna-Diaz, which leaves

23

open the possibility of such an exception, noting that "allowing § 2L1.2(b)'s enhancement to rest on a prior conviction vacated as a result of a constitutional infirmity, egregious error of law, or determination of innocence, might in some limited circumstances raise constitutional due process concerns." 222 F.3d at 6 n.5. We similarly left the question open in our unpublished decision in Moran-Rosario, recognizing the potential exception flagged in Luna-Diaz but finding that any such exception was not implicated on the facts of that case. 466 F. App'x at 258-59.

We again have no occasion to decide the issue. As explained above, because Padilla does not apply retroactively, Moreno-Tapia's state convictions were not unconstitutionally obtained. Nor, as the district court emphasized, has Moreno-Tapia contended that he is actually innocent of the state indecent liberties charges. Accordingly, application of § 2L1.2's 12-level enhancement does not implicate the potential due process concerns articulated in Luna-Diaz and Moran-Rosario. Cf. Garcia-Lopez, 375 F.3d at 589 (applying § 2L1.2 enhancement where conviction vacated on state-law grounds). Under these circumstances, the district court correctly applied § 2L1.2's 12-level increase to Moreno-Tapia's offense level, and we affirm its sentencing determination.

24

## III.

For the foregoing reasons, we affirm the judgment of the district court.

<u>AFFIRMED</u>