**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-4025**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

RODRIGO MARTINEZ-MENDOZA, a/k/a Rodrigo Martinez-Martinez,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Henry E. Hudson, Senior District Judge.  (3:17-cr-00164-HEH-1)

Argued:  May 7, 2021                                      Decided:  July 26, 2021

Before AGEE, HARRIS, and RUSHING, Circuit Judges.

Affirmed by unpublished opinion.  Judge Harris wrote the opinion, in which Judge Agee and Judge Rushing joined.

**ARGUED:**  Caroline Swift Platt, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Daniel Taylor Young, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:**  Geremy C. Kamens, Federal Public Defender, Joseph S. Camden, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  G. Zachary Terwilliger, United States Attorney, Alexandria, Virginia, S. David Schiller,

Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

In 1997, Rodrigo Martinez-Mendoza was ordered deported in absentia, after he failed to attend his deportation hearing. Twenty years later, based on that order, he was charged with illegal entry under 8 U.S.C. § 1326. During his criminal proceedings, he sought to challenge the 1997 order collaterally, arguing that its entry in absentia violated his due process rights.

The district court denied Martinez-Mendoza's motions to dismiss the indictment against him, finding that he could not establish the factual predicates for his collateral challenge, and Martinez-Mendoza was convicted. Because the district court's factual findings were not clearly erroneous, we uphold the court's denial of Martinez-Mendoza's motions to dismiss and affirm the court's judgment.

## I.

### A.

We begin with the facts surrounding the 1997 deportation order entered against Martinez-Mendoza, the subject of the collateral attack now before us. Martinez-Mendoza, a Mexican citizen who had entered the United States without inspection, was served personally with an Order to Show Cause on November 10, 1996. That Order initiated deportation proceedings against Martinez-Mendoza. It also told him that there would be a hearing before an immigration judge ("IJ") on a date yet to be determined, and that notice of the hearing date would be mailed to his home address, which Martinez-Mendoza provided on the form. Martinez-Mendoza was warned that a deportation order would be

3

entered in his absence if he failed to attend the hearing, and informed of his right to challenge such an order.

Whether the Immigration and Naturalization Service ("INS") properly served the notice of a hearing date that was supposed to follow – officially, a "Notice of Hearing" – is one of the disputes at the heart of this case. No certified mail return receipt was recorded or placed in Martinez-Mendoza's file. The IJ later would determine, however, that the Notice of Hearing indeed had been sent by certified mail to Martinez-Mendoza's home address in Houston, Texas, notwithstanding the missing return receipt.

On April 9, 1997 – before the scheduled hearing – INS officers stopped Martinez-Mendoza during a workplace raid in Galveston, Texas. Officer Ray Lamb of the INS filled out an I-213 form memorializing his interview with Martinez-Mendoza, on which he indicated that Martinez-Mendoza had a deportation hearing scheduled for May 1997. At the same time, Lamb noted that Martinez-Mendoza was "VR'd" to Mexico on his own request. J.A. 114. As subsequent testimony would make clear, "VR" refers to voluntary return, a process by which Mexican nationals were permitted to return to Mexico without entry of a formal removal order against them.

It is undisputed that Martinez-Mendoza in fact returned to Mexico in April 1997. The parties do dispute, however – in the second factual dispute relevant here – whether he was voluntarily returned by the INS or went to Mexico on his own. Either way, Martinez-Mendoza was in Mexico on May 6, 1997, the day of his deportation hearing.

At the hearing, the IJ addressed the notice issue disputed here, stating orally that notice had been sent to Martinez-Mendoza's home address and entering what appears to

4

have been a copy of that notice as "Exhibit number 1." J.A. 436. Because Martinez-Mendoza did not attend the hearing, the IJ ordered him removed in absentia. In his written order, the IJ indicated both that Martinez-Mendoza had been served with notice by certified mail and the absence of a return receipt. Notice of the in absentia deportation order was mailed to Martinez-Mendoza's address in Houston. Martinez-Mendoza did not challenge the order then or at any time until the current criminal case.

**B.**

We turn now to the criminal proceedings before us on appeal. In December 2017, Martinez-Mendoza was charged with illegal reentry under 8 U.S.C. § 1326(a) and (b)(1), based on the in absentia deportation order entered against him in 1997.[*] Martinez-Mendoza moved to dismiss the indictment under § 1326(d), challenging the validity of the 1997 order.

In his motion, Martinez-Mendoza made two key claims: first, that he was not properly served with a notice of his hearing date, given the absence of a certified mail return receipt; and second, that he had been voluntarily returned to Mexico by the INS prior to his hearing date, making it impossible for him to attend. For both reasons, Martinez-Mendoza argued, entry of an in absentia order after his hearing was fundamentally unfair under § 1326(d). *See* 8 U.S.C. § 1326(d)(3) (allowing collateral attacks only where, *inter*

---

[*] This is the second time that Martinez-Mendoza has been convicted of illegal reentry. Martinez-Mendoza also was convicted of illegal reentry under § 1326(a) in 2009, based on the same 1997 deportation order at issue here. In the present proceeding, Martinez-Mendoza also was charged under § 1326(b)(1), which imposes additional penalties on defendants with prior felony convictions.

*alia*, entry of deportation order was "fundamentally unfair"). And, he finished, because those same procedural flaws also prevented him from seeking review of his deportation order when it was entered in 1997, he was now entitled to attack that order collaterally in his criminal proceeding. *See id.* § 1326(d)(2) (allowing collateral attacks where, *inter alia*, deportation proceedings "improperly deprived" defendant of judicial review); *United States v. El Shami*, 434 F.3d 659, 663–64 (4th Cir. 2005).

After holding two evidentiary hearings, the district court rejected Martinez-Mendoza's collateral challenge, denying his motion to dismiss the indictment and then, in an oral ruling, his renewed motion to dismiss. *See United States v. Martinez-Mendoza*, No. 3:17-CR-164-HEH, 2019 WL 1293340, at *6 (E.D. Va. Mar. 20, 2019); J.A. 322–23. The court's rulings were based on two critical factual findings. First, the district court found that Martinez-Mendoza had received actual notice of his deportation hearing. *Martinez-Mendoza*, 2019 WL 1293340, at *5. The IJ, the court explained, had indicated that notice had been sent by certified mail to Martinez-Mendoza's home address. *Id.* Moreover, the "reasonable inference" was that the notice had been received: The notes taken by Officer Lamb in Galveston listed a May 1997 hearing date, suggesting that Martinez-Mendoza had informed Lamb of his May 6, 1997, deportation hearing. *Id.* And finally, the court noted, Martinez-Mendoza had neither testified that he did not receive notice nor provided any other evidence to that effect. *Id.*

The district court also found insufficient evidence to support Martinez-Mendoza's allegation that he had been voluntarily returned to Mexico by the INS before his hearing date. *Id.* at *6. The court acknowledged that the "VR" notation on the April 1997 I-213

6

form filled out by Officer Lamb could refer to voluntary return. *Id.* But the court credited the testimony of Lamb and a DHS officer currently assigned to Martinez-Mendoza's case that voluntary return was only a "remote possibility" in this case, given the absence in Martinez-Mendoza's file of other documents that should accompany a voluntary return, local policies that would have precluded Martinez-Mendoza's voluntary return at the time, and the possibility that Lamb had incorrectly noted a "VR" on the form. J.A. 322; *see Martinez-Mendoza*, 2019 WL 1293340, at *6.

Because Martinez-Mendoza had actual notice of his hearing and had not been voluntarily returned to Mexico by the INS, the district court concluded, he could not meet the requirements for a collateral challenge to a deportation order under § 1326(d). *See Martinez-Mendoza*, 2019 WL 1293340, at *5–6; J.A. 322–23. In particular, the court held, he could not establish that some procedural defect made it impossible for him to challenge his 1997 order directly and at the time of entry, by exhausting his administrative remedies or seeking judicial review. *Martinez-Mendoza*, 2019 WL 1293340, at *5–6; J.A. 323.

After the district court denied his motions to dismiss the indictment, Martinez-Mendoza proceeded to a bench trial and was convicted of illegal reentry, based on the 1997 deportation order. The district court sentenced him to 72 months' imprisonment, varying upward from the Guidelines sentencing range.

Martinez-Mendoza filed this timely appeal, challenging only the district court's denial of his motions to dismiss.

## II.

On appeal of the denial of a motion to dismiss an indictment under § 1326(d), we review the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Lopez-Collazo*, 824 F.3d 453, 460 (4th Cir. 2016) (citation omitted). Here, the district court's decision rested on two factual findings to which we owe substantial deference. *See United States v. Shea*, 989 F.3d 271, 277 (4th Cir. 2021) (citations omitted). So long as those findings are "plausible," we will affirm them; "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) (citation omitted).

The underlying question in this appeal is whether the government may rely on the 1997 deportation order, issued in absentia, to prove its unlawful reentry case against Martinez-Mendoza. To win a conviction under § 1326, the government must prove, as an element of the offense, a defendant's prior removal or deportation. And as a general matter, the government may rely on a duly entered removal order to meet that burden. *See United States v. Cortez*, 930 F.3d 350, 356 (4th Cir. 2019) (citation omitted). "But there is an exception, allowing a defendant to collaterally attack a removal order – so that it no longer serves as a predicate for a criminal reentry charge – when there was a procedural flaw in the immigration proceeding that prevented the noncitizen from seeking review when the order was issued, thus violating his due process rights." *Id.* (internal quotation marks omitted).

8

That exception is now codified at 8 U.S.C. § 1326(d).  *See United States v. Moreno-Tapia*, 848 F.3d 162, 165–66 (4th Cir. 2017).  In order to bring a successful collateral attack against a deportation order, the defendant must meet three requirements, showing that:  (1) he "exhausted any administrative remedies" available to seek relief against the order; (2) the removal proceedings "improperly deprived [him] of the opportunity for judicial review" of the order; and (3) entry of the order was "fundamentally unfair."  *See* 8 U.S.C. § 1326(d)(1)–(3); *Moreno-Tapia*, 848 F.3d at 166 (describing three factors).  A defendant may satisfy the first two of those requirements where a procedural defect in the immigration proceedings makes it impossible to seek administrative or judicial review when an order is entered.  *See El Shami*, 434 F.3d at 664; *Moreno-Tapia*, 848 F.3d at 169. But importantly, the burden always remains on the defendant to make the necessary showing under each of § 1326(d)'s three prongs.  *See El Shami*, 434 F.3d at 663; *Lopez-Collazo*, 824 F.3d at 458.

As noted above, Martinez-Mendoza relies primarily on two claims for his collateral attack on the 1997 deportation order:  first, that he did not receive proper notice of the hearing at which he was ordered deported in absentia; and second, that because the INS had voluntarily returned him to Mexico, he could not attend his hearing in any event.  The government has raised questions as to whether, even assuming a lack of notice or voluntary return to Mexico, Martinez-Mendoza could satisfy the requirements of § 1326(d).  We need not consider those questions here, however.  After holding two evidentiary hearings, the district court rejected Martinez-Mendoza's collateral challenge because he could show neither of the factual predicates necessary to his claim – that he received no notice of his

9

hearing, or that he was voluntarily returned to Mexico by the INS. Because the district court's factual findings are not clearly erroneous, we affirm its judgment on that ground alone.

First, the district court's finding that Martinez-Mendoza had actual notice of his hearing date is an entirely "plausible" account of the record evidence. *See Anderson*, 470 U.S. at 574 (reviewing court will overturn factual finding only where it is not "plausible in light of the record viewed in its entirety"). As the district court emphasized, the IJ directly addressed this question back in 1997 – when evidence would have been more readily available – stating that notice *had* been mailed to Martinez-Mendoza's home address and entering a copy of that notice as a hearing exhibit. Moreover, Officer Lamb noted after his April 1997 interview with Martinez-Mendoza that a deportation hearing was scheduled for May. Like the district court, we think it reasonable to infer that Martinez-Mendoza informed Lamb of that fact. And finally, given that Martinez-Mendoza bears the burden of showing lack of notice, the district court properly factored in his failure to testify to that effect, or present any evidence that he did not know of his hearing date. *Cf. El Shami*, 434 F.3d at 664 (relying on testimony of defendant, corroborated by testimony of his wife, that he did not receive notice of his deportation hearing).

To the extent Martinez-Mendoza argues that any notice he received was improper because it failed to comply with statutory requirements – specifically, with a requirement for a certified mail return receipt – we need not address that contention. Which statute or what agency precedent governed the mechanics of service in Martinez-Mendoza's deportation proceedings is not relevant here. This appeal concerns a § 1326(d) challenge,

which means that a statutory shortcoming in the underlying deportation proceedings will matter only if it amounts to "fundamental[]" unfairness and also prevented Martinez-Mendoza from seeking administrative or judicial review of the 1997 deportation order. And if Martinez-Mendoza received *actual* notice of his hearing date, as the district court found, then no procedural flaw would have prevented him from attending his hearing and then seeking administrative or judicial relief for any statutory deficiency in his written notice.

Nor do we have reason to disturb the district court's finding that the INS did not voluntarily return Martinez-Mendoza to Mexico prior to his hearing. In its oral ruling, the district court acknowledged a "possibility" that Martinez-Mendoza had been voluntarily returned, given the "VR" notation on the I-213 form filled out by Officer Lamb in Galveston. J.A. 322. But the burden is on Martinez-Mendoza under § 1326(d), and after holding a second evidentiary hearing, the district court credited the testimony of two government witnesses, including Lamb, explaining why they believed that Martinez-Mendoza in fact had *not* been voluntarily returned: because his file was missing documentation that would have been included had he been voluntarily returned, and because local policies would have precluded voluntary return in Martinez-Mendoza's case. In effect, the district court chose one of "two permissible views of the evidence," *Anderson*, 470 U.S. at 574 – the one in which the INS erred by noting an incorrect "VR" on a form, rather than by voluntarily returning Martinez-Mendoza without the requisite paperwork and contrary to local guidance. We owe special deference to a district court finding, like

11

this one, that is based on an assessment of witness credibility, *see id.* at 575, and discern no clear error in the district court's finding here.

In sum, we need not consider in this case whether § 1326(d) would entitle Martinez-Mendoza to collaterally challenge the 1997 deportation order if he could establish that he had no actual notice of his hearing date or that he had been voluntarily returned to Mexico before the hearing. The district court held that Martinez-Mendoza had not made either of the factual showings on which his claim rests, and we affirm that determination under the clear error standard of review.

### III.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*